The trial court found the following facts: On May 11, 1973, the defendant and his wife appointed Alfred A. Cadoret their attorney under a written power authorizing him to "transact for me all and every kind of business whatever; to purchase or sell for me, in my name, all kinds of property, real and personal; to sign my name to any note, mortgage, bond, check, draft, deed, stock proxy, automobile title, bank withdrawal form, or *Page 655 
any instrument whatsoever situate and to bind me thereby in as full and complete manner as I myself could do, were I personally present and signing the same. . . ." Cadoret had the power of attorney in his possession for about two months and he did purchase some land in Florida for the defendant.
The plaintiff had been selling bifold doors and other items to Gator Doors, Inc., a Florida corporation, hereinafter referred to as Gator Doors, and, in June, 1973, there was a balance of $2131.32 owing to the plaintiff on that account. After a meeting between several officers of the plaintiff corporation and the president of Gator Doors, it was agreed that a promissory note in the amount of $11,079.32 would be prepared, that amount representing the balance for previous shipments and an additional sum for a new shipment of doors. At the meeting it had been indicated that the defendant, Cadoret, and another person owned half of the company and that the plaintiff expected the defendant to sign the note as a guarantor. A note, prepared by the plaintiff, was forwarded to Gator Doors and was executed in its behalf by its president. It was also signed "Richard Bezzini by Alfred A. Cadoret" and "Alfred A. Cadoret, power of attorney for Richard Bezzini." A copy of the power of attorney given to Cadoret was attached to the note when it was returned to the plaintiff.
The plaintiff never made any further shipments to Gator Doors. After the note was received and prior to shipment, the comptroller of the plaintiff corporation contacted the defendant for the first time and learned that there was a dispute regarding the note and the power of attorney.
The trial court found that Cadoret was authorized to sign the note in behalf of the defendant as a guarantor. It also concluded that the defendant had *Page 656 
failed to deny his signature on the note specifically in the pleadings and, consequently, the signature was deemed to have been admitted.
The Uniform Commercial Code, General Statutes42a-3-307 (1), provides that "[u]nless specifically denied in the pleadings each signature on an instrument is admitted. . . ." A similar requirement may be found in General Statutes 52-93 and in Practice Book 116 where "the defendant intends to controvert . . . the execution or delivery of any written instrument. . . ." The official comment on that section of the Uniform Commercial Code declares that the "purpose of the requirement of a specific denial in the pleadings is to give the plaintiff notice that he must meet a claim of forgery or lack of authority as to the particular signature, and to afford him an opportunity to investigate and obtain evidence." Uniform Laws Annotated, Uniform Commercial Code, 3-307.
The complaint contained an allegation that "the defendant, by his note made jointly with Gator Doors, Inc., promised to pay to the order of the plaintiff the principal sum. . . ." The answer of the defendant consisted of a general denial of the complaint and included a special defense that the note "was signed under a purported power of attorney which was obtained by misrepresentation and fraud, and was revoked prior to the execution of said note." Although the defendant overlooked the distinction between a specific denial and a special defense; Practice Book 116-118, 120; 1 Stephenson, Conn. Civil Proc. (2d Ed.) 126e; it is apparent that the facts stated in his special defense sufficiently apprised the plaintiff that the effectiveness of the defendant's signature on the note was contested. In cases under 52-93 and 116 where admissions have been found, there have been no special defenses raising the issue of due execution *Page 657 
or authority. Woronieki v. Pariskiego, 74 Conn. 224,226; Jacobs v. Hogan, 73 Conn. 740, 741; Garland v. Gaines, 73 Conn. 662, 665. Furthermore, it does not appear that any objection was made by the plaintiff to the evidence introduced in support of the special defense raising lack of authority as an issue. When the defendant failed to object upon the ground of variance or improper pleading, "he waived his right subsequently to insist upon the rule." Gorski v. Zitkov, 104 Conn. 338, 340. We therefore disagree with the conclusion of the trial court that the defendant must be deemed to have admitted the effectiveness of the signature.
The plaintiff also relies upon an additional provision of 42a-3-307 (1) that, even where the effectiveness of a signature has been put in issue, "(a) the burden of establishing it is on the party claiming under the signature; but (b) the signature is presumed to be genuine or authorized except where the action is to enforce the obligation of a purported signer who has died or become incompetent before proof is required." The official comment states that "until some evidence is introduced which would support a finding that the signature is forged or unauthorized the plaintiff is not required to prove that it is authentic." Uniform Laws Annotated, Uniform Commercial Code, 3-307. There is no question that there was sufficient evidence to indicate that the signature of the defendant on the note by Cadoret was unauthorized. Once that evidence was introduced, the ultimate burden of persuasion was upon the plaintiff. Ibid.; see Esposito v. Fascione, 111 R.I. 91.
The finding of the trial court that Cadoret was authorized to sign the defendant's name as comaker of the note rests wholly upon the terms of the power of attorney itself. There was no other evidence of Cadoret's authority except the testimony of the *Page 658 
defendant that he had given the power of attorney for the purpose of having Cadoret buy some land for him in Florida. The trial court found that the defendant's "purposes included" the purchase of land in Florida. In the absence of evidence of some other purpose, we must assume there was none, since the plaintiff had the burden of proof on the issue of agency.[1] In addition, there was no evidence that the defendant had any interest[2]
in Gator Doors to justify the signing of his name as an accommodation party.
Once it is established that an agency has been created for a particular purpose, the agent is considered a special agent who cannot bind his principal by any act in excess of his authority. Ladd v. Franklin, 37 Conn. 53, 62. Any general language in a power of attorney given to a special agent must be construed accordingly. "[A] general clause in a power of attorney given for a specific purpose, authorizing the agent to do `any and every act' in the principal's name which he could do in person, must be construed to relate to the specific purpose, and does not constitute such agent a general agent." 3 Am.Jur.2d, Agency, 31; United States National Bank v. Herron, 73 Or. 391.
"An essential ingredient of agency is that the agent is doing something at the behest and for the benefit of the principal." Leary v. Johnson,159 Conn. 101, 105-106. For that reason, in the absence of special circumstances, an agent is not authorized to make accommodation endorsements in the name *Page 659 
of the principal. 3 Am.Jur.2d, Agency, 144; 2A C.J.S., Agency, 202; Restatement (Second), Agency 76.
Although the trial court did not rely upon the principle of apparent authority in rendering judgment, in the interest of avoiding a new trial we may consider that question. Absent a showing that any acts or conduct on the part of the defendant induced the plaintiff to believe that Cadoret's act was duly authorized, a claim based upon apparent authority could not succeed. Hollywyle Assn., Inc. v. Hollister, 164 Conn. 389, 397. There was no evidence of that in this case. Furthermore, there was no evidence that the plaintiff fulfilled the "duty of inquiry placed on a party dealing with a known agent to ascertain whether that agent is acting within the scope of his authority," until the time when the additional shipment was cancelled. Ibid. Where the agent is acting for the benefit of himself or a third person, as in the case of an accommodation signature unrelated to any interest of the principal, "the transaction is suspicious upon its face, and the principal is not bound unless the agent is authorized." Restatement (Second), Agency 165(c). Also, since apparent authority rests upon the estoppel principle, the fact that the plaintiff suffered no detriment in relying upon the power of attorney would preclude a recovery based upon that theory. 3 Am.Jur.2d, Agency, 75.
We conclude that the trial court erred in finding that Cadoret was authorized to sign the note in behalf of the defendant.
 There is error, the judgment is set aside and the case is remanded with direction to render judgment for the defendant.
In this opinion PARSKEY and A. ARMENTANO, Js., concurred.