## Yale University *v.* Richard Blumenthal, Attorney General
### (14441)

Callahan, Borden, Berdon, Katz and F. X. Hennessy, Js.

Argued November 5, 1992—decision released March 16, 1993

*Mark R. Kravitz,* with whom was *Dorothy K. Robinson,* for the appellant (plaintiff).

*Janet A. Spaulding,* assistant attorney general, with whom were *David E. Ormstedt,* assistant attorney

general, and, on the brief, *Richard Blumenthal,*
attorney general, for the appellee (defendant).

*Gregory T. D'Auria, Alan E. Lieberman* and *Theo-dore M. Space* filed a brief for the Connecticut Association of Independent Schools, Inc., et al., as amici curiae.

CALLAHAN, J. This case concerns the proper application and use of a bequest made to the Yale School of Medicine in the will of Thomas F. Smallman, a physician. Smallman was an alumnus of the Yale School of Medicine, a member of the class of 1905. He died in Brooklyn, New York, in 1928, leaving a will that he had executed a short time prior to his death. He was survived by his wife, Jane C. Smallman. In article 22 of his will, Smallman left $225,000 in trust for his wife, directing that it be invested and that the net income be paid to her in quarterly installments during her lifetime, or until she remarried.

Article 22 also provided that upon the death or remarriage of Jane Smallman, "the net principal sum and net undistributed income therefrom, shall thereupon be paid to Yale College, at New Haven, Connecticut, to be used for the building of a wing for the Yale Medical School to be known as the Jane Smallman Wing, for the treatment of the sick poor." Jane Smallman never remarried. She died in 1987 at the age of 106. Upon her death and the termination of the trust, the trustees paid over to the plaintiff, Yale University (Yale), the sum of $312,086.

At the time of the termination of the trust, the Yale School of Medicine no longer maintained separate physical facilities for the treatment of the "sick poor" as it had in Thomas Smallman's years as a student there. The amount received by Yale from the trust, moreover, was now insufficient to construct a new wing to the medical school. Because it could not comply with the terms of the will as written, Yale sought the advice of

the attorney general in an attempt to achieve an agreement concerning an acceptable alternative use of Smallman's bequest. The attorney general and Yale, however, were unable to agree on a utilization of the fund that would accommodate the decedent's wishes.

Yale subsequently filed suit in the Superior Court in the judicial district of New Haven pursuant to the Connecticut Uniform Management of Institutional Funds Act[1] (CUMIFA), seeking the release of the restrictions in Smallman's will that required that his bequest be used to build a wing to the medical school for the segregated treatment of the "sick poor." Yale also sought a decree that, in creating a suitable memorial to Jane Smallman, it be allowed to use the fund for the benefit of its school of medicine in whatever manner it chose to further its educational purposes.

Yale alleged in its complaint that it sought release from the restrictions in Smallman's will because the restrictions were now "obsolete, inappropriate and impractical, in that: (a) The amount of the bequest is insufficient to cover the cost of a wing to a building; (b) The School of Medicine does not maintain, and it would be medically undesirable to maintain, separate physical facilities for the treatment of patients classified by income level; [and] (c) The creation of a facility 'for the treatment of the sick poor' would violate the principle of treating all patients, regardless of their income or resources, in the same facilities." See General Statutes § 45a-533.[2]

---

[1] See General Statutes §§ 45a-526 through 45a-534.

[2] "[General Statutes] Sec. 45a-533. (Formerly Sec. 45-100o). RELEASE OF RESTRICTION IN GIFT INSTRUMENT: WRITTEN CONSENT, COURT ORDER. LIMITATIONS. DOCTRINE OF CY PRES APPLICABLE. (a) With the written consent of the donor, the governing board may release, in whole or in part, a restriction imposed by the applicable gift instrument on the use or investment of an institutional fund.

"(b) If written consent of the donor cannot be obtained by reason of his death, disability, unavailability or impossibility of identification, the govern-

In response, the attorney general moved to strike Yale's complaint, contending that Smallman's bequest was not an institutional fund as defined by General Statutes § 45a-527 (2) (B),[3] and that the complaint consequently failed to state a cause of action under CUMIFA. See Practice Book § 152. The trial court granted the attorney general's motion to strike and thereafter rendered judgment against Yale. Yale appealed to the Appellate Court and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

In granting the motion to strike, the trial court agreed with the attorney general that Smallman's bequest was not possessed by Yale as an institutional fund as defined by § 45a-527 (2). The court held, therefore, that Yale could not avail itself of General Statutes § 45a-533 as an avenue of relief from the restrictions in Smallman's will. The court reasoned that the building of a wing to the medical school to treat the "sick poor" was "only incidental to the primary purpose of treating the poor when they became ill."

ing board may apply, in the name of the institution, to the superior court for a judicial district in which the institution conducts its affairs for release of a restriction imposed by the applicable gift instrument on the use or investment of an institutional fund. The attorney general shall be notified of the application and shall be given an opportunity to be heard. If the court finds that the restriction is obsolete, inappropriate or impracticable, it may by order release the restriction in whole or in part. A release under this subsection may not change an endowment fund to a fund that is not an endowment fund.

"(c) A release under this section may not allow a fund to be used for purposes other than the educational, religious, charitable or other eleemosynary purposes of the institution affected.

"(d) This section does not limit the application of the doctrine of cy pres or approximation."

[3] General Statutes § 45a-527 (2) (B) provides: "DEFINITIONS. As used in sections 45a-526 to 45a-534, inclusive . . .

"(2) 'Institutional fund' means a fund held by an institution for its exclusive use, benefit or purposes, but does not include . . . (B) a fund in which a beneficiary that is not an institution has an interest, other than possible rights that could arise upon violation or failure of the purposes of the fund."

It appears to have concluded that Smallman's bequest was not held for Yale's "exclusive use, benefit or purposes," and also that the bequest was one "in which a beneficiary that is not an institution has an interest." General Statutes § 45a-527 (2) (B).

If either or both of the trial court's conclusions are correct, the fund created by Smallman's will is not an institutional fund as defined by § 45a-527 (2) (B). The court would have been correct, therefore, in striking Yale's complaint because § 45a-533, pursuant to which Yale sought the release of the restrictions in the will, has application only to institutional funds.

The particular question posed by this appeal is extremely narrow.[4] The issue of whether Yale may ultimately be entitled to a release or a modification[5] of the restrictions in Smallman's will is not before us. The only issue raised by the trial court's decision and the only issue that we decide is whether Smallman's bequest is

[4] The attorney general in his brief voices concerns with regard to the constitutionality of General Statutes § 45a-533, its relationship to the statute of charitable trusts, General Statutes § 45a-514, the statute of charitable uses, General Statutes § 47-2, and the doctrines of cy pres and approximation. Those concerns were not the basis for the attorney general's motion to strike, were not raised in the trial court, are not the subject of this appeal and are premature. We therefore decline to address them.

[5] Under CUMIFA, the doctrine of cy pres or approximation applies to institutional funds. General Statutes § 45a-533 (d). We believe that the dissent misconstrues the relationship between CUMIFA and the doctrines of cy pres and approximation. CUMIFA is not mutually exclusive of these doctrines; the trial court may apply, and indeed has a responsibility to apply, these doctrines to an institutional fund as equity dictates. Cf. *Lockwood* v. *Killian*, 172 Conn. 496, 508, 375 A.2d 998 (1977).

"New England courts apply a rather strict doctrine of separation of powers to deny legislative encroachment on judicial cy pres. The [Uniform Management of Institutional Funds] Act is compatible with the New England cases because the final decision is in the courts. See *City of Hartford* v. *Larrabee Fund Association,* 161 Conn. 312, 288 A.2d 71 (1971); Opinion of Justices, 101 N.H. 531, 133 A.2d 792 (1957)." Uniform Management of Institutional Funds Act, § 7 (d), comment, 7A U.L.A. 723, 724 (1985).

held by Yale as an institutional fund[6] under § 45a-527 (2). If it is, Yale is entitled to proceed with its action to seek relief from the restrictions in the will under § 45a-533 and the trial court improperly dismissed its complaint.

Not surprisingly, the issue appears to be one of first impression. In the absence of prior authority to aid in the interpretation of § 45a-527 (2) (B), we are guided by the meaning ascribed by its drafters to the parallel provision of the Uniform Management of Institutional Funds Act (UMIFA).[7] *Griffin* v. *S. W. Devanney & Co.*, 775 P.2d 555, 559 (Colo. 1989); 2B J. Sutherland, Statutory Construction (5th Ed. 1992) § 52.05; see *DeLuca* v. *C. W. Blakeslee & Sons, Inc.*, 174 Conn. 535, 540–41, 391 A.2d 170 (1978). Section 45a-527 (2) requires that in order to qualify as an institutional fund, a fund first must be held by an institution for "its exclusive use, benefit or purposes." The quoted language was adopted verbatim by the Connecticut legislature from the language of § 1 (2) of UMIFA, 7A U.L.A. 712 (1985). In its published comments to that section, the commission that drafted UMIFA explained that the placing of a restriction on the use of a gift or bequest to an institution does not mean that the gift or bequest is not for the "exclusive use, benefit or purposes" of the institution, provided the appointed use is one that is within the institution's lawful purposes. The commission commented that "[t]he 'use, benefit or purposes' of an institution broadly encompasses all of the activities permitted by its charter or other source of authority." UMIFA, § 1 (2), comment, 7A U.L.A. 713 (1985). Moreover, the commission noted that a "fund to provide

---

[6] It is undisputed that Yale is an "Institution" within the meaning of General Statutes § 45a-527 (1).

[7] The Connecticut legislature adopted the Uniform Management of Institutional Funds Act (UMIFA) in 1973. Public Acts 1973, No. 73-548, now codified as General Statutes §§ 45a-526 through 45a-534, the Connecticut Uniform Management of Institutional Funds Act (CUMIFA).

scholarships for students or *medical care for indigent patients* is held by the school or hospital for the institution's purposes." (Emphasis added.) Id.

A court can "properly consider the official comments as well as the published comments of the drafters as a source for determining the meaning of an ambiguous provision [of a uniform act]." 2B J. Sutherland, supra, § 52.05; *Hill* v. *Blake,* 186 Conn. 404, 408, 441 A.2d 841 (1982); *General Products Co.* v. *Bezzini,* 33 Conn. Sup. 654, 656–57, 365 A.2d 843 (1976); *Griffin* v. *S. W. Devanney & Co.,* supra, 560–61. Moreover, it is manifest that the legislature in enacting CUMIFA intended to implement the intention, meaning and objectives of the commission that drafted UMIFA. In § 45a-534 the legislature explicitly stated that "[s]ections 45a-526 to 45a-534, inclusive, [CUMIFA] shall be so applied and construed as to effectuate their general purpose to make uniform the law with respect to the subject of said sections among those states which enact them." Only if the intent of the drafters of a uniform act becomes the intent of the legislature in adopting it can uniformity be achieved. *Manufacturers Hanover Trust Co.* v. *Bartram,* 158 Conn. 48, 64 n.3, 255 A.2d 828 (1969); *Layne-Minnesota Co.* v. *Regents of University of Minnesota,* 123 N.W.2d 371, 376 n.13 (Minn. 1963). Otherwise, there would be as many variations of a uniform act as there are legislatures that adopt it. Such a situation would completely thwart the purpose of uniform laws.

The treatment of the "sick poor" is an activity in which the Yale School of Medicine can, and does, lawfully engage. The fund received by Yale from Smallman's will therefore fits within the first prong of the definition of an institutional fund as contemplated by the commission that drafted the uniform law from which CUMIFA is derived.

Section 45a-527 (2) (B) also requires that, in order to qualify as an institutional fund, a fund may not be one "in which a beneficiary that is not an institution has an interest, other than possible rights that could arise upon violation or failure of the purposes of the fund." CUMIFA does not define "beneficiary" and its meaning in the context in which it is used, contrary to the protestations of the attorney general, is ambiguous. We therefore are not confined to the words of the statute for insight as to the meaning of "beneficiary." *Zachs* v. *Groppo,* 207 Conn. 683, 690, 542 A.2d 1145 (1988); *King* v. *Board of Education,* 203 Conn. 324, 332–33, 524 A.2d 1131 (1987).

The commission in its comments addressed to § 1 (2) (ii) of UMIFA; 7A U.L.A. 713 (1985); which was adopted word for word by the legislature when it enacted § 45a-527 (2) (B), explained that a fund held by an institution for "an *individual beneficiary* such as an annuity trust[8] or a unitrust"[9] would not be an institutional fund. (Emphasis added.) The commission stated, however, that a fund held by a school for scholarships or by a hospital for the medical care of indigent patients "is not deemed to be held for the benefit of a particular student or patient as distinct from the use, benefit or purposes of the institution, nor does the student or patient have an interest in the fund as a 'beneficiary which is not an institution.' " UMIFA, § 1 (2), comment, 7A U.L.A. 713 (1985). Although the "sick poor" can be said to have an interest in Smallman's bequest in the sense that they might have rights that accrue should the bequest fail or Yale violate its purposes, that situation is explicitly anticipated by § 45a-527 (2) (B)

---

[8] An annuity trust is a form of trust calling for payment of a fixed amount of income regardless of the amount of principal. Black's Law Dictionary (5th Ed.).

[9] A unitrust is a trust from which a fixed percentage of the net fair market value of the trust's assets, valued annually, is paid each year to the trustee. Black's Law Dictionary (5th Ed.).

and does not take the bequest outside the definition of an institutional fund. UMIFA, § 1 (2), comment, 7A U.L.A. 713 (1985). From the explanatory comments of the commission that drafted UMIFA and a plain reading of § 45a-534, we discern that it was the legislative intention that a fund bequeathed to an institution, for the ultimate benefit of an inchoate group or class, through the medium of the institution, is held by the institution for its "exclusive use, benefit or purposes" within the meaning of § 45a-527 (2) (B) and therefore is an institutional fund.

If the decision of the trial court were affirmed, it would eviscerate § 45a-533. An institution that is a recipient of a gift without restrictions would have no need for recourse to § 45a-533. It is only gifts upon which restrictions have been imposed that might require the release or variation of those restrictions. If, however, every gift to an institution, encumbered by restrictions, were excluded from the definition of an institutional fund under § 45a-527 (2) (B), institutions that desired to seek the release of such restrictions as are "obsolete, inappropriate or impracticable" would be unable to endeavor to secure their release pursuant to § 45a-533. Such a result would render § 45a-533 a superfluous piece of legislation. We do not attribute the intent to achieve such a result to the legislature. *Hayes* v. *Smith,* 194 Conn. 52, 58, 480 A.2d 425 (1984); *State* v. *Cambria,* 137 Conn. 604, 610, 80 A.2d 516 (1951). We conclude consequently that the fund derived from Smallman's will is held by Yale as an institutional fund and Yale may seek relief pursuant to § 45a-533 (b)[10] from the restrictions imposed by the will.

The judgment is reversed and the case is remanded for further proceedings according to law.

---

[10] See footnote 2.

In this opinion BORDEN, KATZ and F. X. HENNESSY, Js., concurred.

BERDON, J., dissenting. In this case the majority leaves behind basic tenets of statutory construction in reaching the result that the Connecticut Uniform Management of Institutional Funds Act (CUMIFA),[1] governs Dr. Thomas F. Smallman's bequest made for the benefit of the "sick poor." The statutory interpretation lays the ground work for the bequest ending up in the coffers of Yale University for the benefit of its medical school. The majority concludes that Smallman's bequest comes within CUMIFA because it is an "institutional fund" pursuant to General Statutes § 45a-527 (2).[2] Because I believe that Smallman's bequest does not come within the definition of an institutional fund under CUMIFA, I dissent.

Smallman's bequest is simple and forthright. He left the sum of $225,000 in trust to pay the income to his wife and upon her death, "the net principal sum and net undistributed income therefrom, shall thereupon be paid to Yale College, at New Haven, Connecticut, to be used for the building of a wing for the Yale Medical School, to be known as the Jane Smallman Wing, for the *treatment of the sick poor.*" (Emphasis added.) It is clear that when the trustee paid $312,000 to Yale University (Yale), which sum represented the balance of the fund, Yale held it as trustee for the benefit of the sick poor. *Dwyer* v. *Leonard,* 100 Conn. 513, 518,

---

[1] General Statutes §§ 45a-526 through 45a-534.

[2] General Statutes § 45a-527 (2) provides: " 'Institutional fund' means a fund held by an institution for its exclusive use, benefit or purposes, but does not include (A) a fund held for an institution by a trustee that is not an institution, other than a fund which is held for a charitable community trust or (B) a fund in which a beneficiary that is not an institution has an interest, other than possible rights that could arise upon violation or failure of the purposes of the fund."

124 A. 28 (1924);[3] see *Averill* v. *Lewis,* 106 Conn. 582, 590, 138 A. 815 (1927); 2 Restatement (Second), Trusts § 348 (1959).

By labeling this bequest an institutional fund under CUMIFA, the majority gives the Superior Court the power to "release the restriction in whole or in part" if "the restriction is obsolete, inappropriate or impracticable." General Statutes § 45a-533. There is no question that in 1993 Smallman's bequest of $312,000 cannot build a "wing for the Yale Medical School . . . for the treatment of the sick poor," and is therefore obsolete and impracticable. Under these circumstances, if CUMIFA applies, the trial court may release the restriction and the $312,000 becomes a gift to Yale. A review of Yale's prayer for relief in this matter indicates that this is exactly the direction the gift is headed; Yale seeks to release the restriction and obtain a decree from the court permitting the fund to be used by "Yale University for the benefit of its School of Medicine *in whatever manner it may choose* in the furtherance of its educational purposes . . . ."[4] (Emphasis added.)

If, however, Yale were required to petition the court for relief under the doctrine of cy pres, the court would be authorized to release the restriction, but only by directing that the fund be used to approximate the gen-

[3] "Ordinarily it is of little consequence whether a gift to a charitable corporation for one or more of its corporate purposes be in form a gift outright or a gift in trust. In either case the corporation holds it upon a trust which may be enforced through the visitorial power of the State." *Dwyer* v. *Leonard,* 100 Conn. 513, 518, 124 A. 28 (1924).

[4] Yale's prayer for relief claims: "1. A decree releasing the restrictions on the use of the bequest of Dr. Smallman to the effect that it be used 'for the building of a wing for Yale Medical School' and that the wing be used 'for the treatment of the sick poor.'

"2. A decree permitting the bequest of Dr. Smallman to be used by Yale University for the benefit of its School of Medicine in whatever manner it may choose in the furtherance of its educational purposes as a suitable memorial in the name of Jane Smallman.

"3. Such other relief as may be appropriate."

eral intent of Smallman—that is, to benefit the sick poor. *Duncan* v. *Higgins,* 129 Conn. 136, 140, 26 A.2d 849 (1942). The difference is critical—under CUMIFA, Yale may use the fund for its own purposes; under the doctrine of cy pres, Yale must maintain and expend the funds for the sick poor.

The plain language of § 45a-527 (2) sets forth a two part test for determining whether a fund is an institutional fund under CUMIFA: (1) the fund must be held by the institution "for its exclusive use, benefit or purposes"; and (2) the institution must be the beneficiary of the fund. Under ordinary principles of statutory construction, we look first to the plain language of the statute to ascertain its meaning. *Rhodes* v. *Hartford,* 201 Conn. 89, 93, 513 A.2d 124 (1986). Instead, the majority looks to comments published not by Connecticut legislators, but by the drafters of the Uniform Management of Institutional Funds Act.[5] Only if the statutory language is ambiguous may we refer to such commentary. See *State* v. *Kozlowski,* 199 Conn. 667, 673, 509 A.2d 20 (1986).

In the present case, the plaintiff is unable to satisfy either requirement of the two part test. In making this determination, we must focus on the clear and unequivocal language of the bequest. The fund is not for Yale's "exclusive use," nor is it for Yale's "exclusive . . . benefit," nor is it for Yale's "exclusive . . . purposes." Rather, Smallman's gift was designated for the exclusive use and benefit of an identifiable group—the sick poor. Yale, the institution, is not the beneficiary of Smallman's bequest, but merely the trustee. The gift to build a hospital wing was intended to benefit the sick poor.

Furthermore, the majority's construction of CUMIFA renders meaningless the statute on charita-

---

[5] See footnote 7 of the majority opinion.

ble trusts, General Statutes § 45a-514, which requires that a trust "shall forever remain to the uses and purposes to which it has been granted according to the true intent and meaning of the grantor and to no other use."[6] Moreover, General Statutes § 47-2 provides that all "estates granted . . . for the relief of the poor . . . or for any other public and charitable use, shall forever remain to the uses to which they were granted, according to the true intent and meaning of the grantor, and to no other use whatever." The majority refuses to consider these statutes in interpreting CUMIFA and considering whether Smallman's bequest is an institutional fund because they were not the basis for the attorney general's motion to strike and were not raised before the trial court. No authority or rationale is cited for this unusual standard of review.

Not only is the construction of a statute a question of law; *Southington* v. *State Board of Labor Relations*, 210 Conn. 549, 559, 556 A.2d 166 (1989); but there is a fundamental rule of statutory construction that "statutes relating to the same subject matter may be looked to for guidance in reaching an understanding of the meaning of a statutory term." *Doe* v. *Institute of Living, Inc.*, 175 Conn. 49, 58, 392 A.2d 491 (1978). The entire statutory framework of administering charitable bequests must be harmonized; see *Malerba* v. *Cessna Aircraft Co.*, 210 Conn. 189, 195, 554 A.2d 287 (1989); and we cannot ignore this body of statutory and common law merely because the attorney general failed to raise it in the trial court.

---

[6] General Statutes § 45a-514 provides: "Any charitable trust or use created in writing or by deed by any resident of the state, or any public and charitable trust or use for aiding and assisting any person or persons to be selected by the trustees of such trust or use to acquire education, shall forever remain to the uses and purposes to which it has been granted according to the true intent and meaning of the grantor and to no other use."

Finally, because CUMIFA provisions for releasing restrictions are in derogation of the common law, the provisions must be strictly construed. *Yale University School of Medicine* v. *Collier,* 206 Conn. 31, 36, 536 A.2d 588 (1988). Only when it is clear that the donor intended to make the institution the object of his or her charitable bequest, should a fund be labeled an institutional fund. In this case, the unequivocal object of the bequest was to benefit the sick poor.

I am not quite certain of the majority's meaning when it states in footnote 5 that "the doctrine of cy pres or approximation applies to institutional funds. General Statutes § 45a-533 (d)." If the majority is suggesting that § 45a-533 (d) gives the trial court authority to apply the principles of cy pres, even though Yale's complaint in this matter seeks relief solely under CUMIFA, it should say so. Although such a holding would take the sharp edges off CUMIFA by giving the trial court the discretion to apply the doctrine of *cy pres,* I believe this would be a legislative excursion on the part of the majority.[7] Section 45a-533 (d) merely states that "[t]his section does not limit the application of the doctrine of cy pres or approximation." (Emphasis added.) In other words, the statute permits a trustee to bring a petition under cy pres, but it does not give the court the power to employ cy pres principles when the complaint seeks relief under CUMIFA only. The comments published by the commission that drafted the Uniform

[7] General Statutes § 45a-533 (b) gives the trial court discretion to release a restriction that is obsolete, inappropriate or impracticable in whole or in part without regard to cy pres. Notwithstanding § 45a-533 (b), the majority seems to be holding that the trial court must apply the doctrine of cy pres to an institutional fund as equity dictates. If this is the case, what is the purpose of § 45a-533 (b)? Indeed in the comments to the uniform act there is not even a suggestion that it was the intent of the drafters to require the application of cy pres, even if equity dictates, if the fund is designated an institutional fund. The institution may choose to invoke cy pres, but if it fails to do so, the court's discretion under CUMIFA is to release in whole or in part the restriction or to deny the application.

Management of Institutional Funds Act, although not completely clear, tend to support this interpretation. The comments to § 7 provide in part: "Subsection (d) makes it clear that the [Uniform Management of Institutional Funds] Act does not purport to limit the established doctrine of cy pres. . . . The Uniform Act provision is far less broad; *it applies only to the release of restrictions on the gift under limited circumstances.*" (Emphasis added.) Uniform Management of Institutional Funds Act, § 7 (d), comment, 7A U.L.A. 723, 724 (1985).

Accordingly, I dissent.