NORWICH SAVINGS SOCIETY *v.* JOSEPH M.
CALDRELLO II
(13572)

FOTI, LANDAU and HENNESSY, Js.

Argued April 28—decision released August 22, 1995

*Max F. Brunswick,* for the appellant (defendant).

*Elizabeth J. Stewart,* with whom was *Laura E. Evangelista,* for the appellee (plaintiff).

HENNESSY, J. The defendant appeals from the judgment of foreclosure by sale and the judgment in favor of the plaintiff bank on the defendant's counterclaim. The defendant claims that the trial court improperly (1) granted the motions to strike his special defenses, (2) failed to find a violation of General Statutes § 42-110a et seq., the Connecticut Unfair Trade Practices Act (CUTPA), and (3) concluded that a secret

extension of the terms of a loan did not materially harm the defendant. We affirm the judgment of the trial court.

The trial court found the following facts relevant to this appeal. The defendant's father, Joseph Caldrello, Sr., is the principal stockholder, director and chief operating officer of Caldrello Motors Groups (Caldrello Motors), a number of corporations owning various retail automobile dealerships in Connecticut, Rhode Island, New Jersey and California. Caldrello Motors had gross annual revenues in excess of $80 million. Caldrello, Sr., and Caldrello Motors had a long-standing relationship with the plaintiff and James R. Brown, its senior vice president and senior lending officer.

In the autumn of 1987, Caldrello Motors was in danger of failing and sought a loan from the plaintiff. Neither Caldrello, Sr., nor Caldrello Motors had sufficient collateral to secure the funding necessary for Caldrello Motors to survive. It was suggested that the defendant, who was the director of operations for Caldrello Motors, use his personal residence as collateral to obtain a personal loan, which would be used to pay off certain pressing liabilities of Caldrello Motors. The defendant was reluctant to sign a note and mortgage to obtain the loan but eventually agreed to the plan. Before executing the note and mortgage, however, the defendant obtained a letter signed by his father confirming the obligation to repay his son. It was expected by all the parties that the loan to the defendant was to be repaid within ninety days by Caldrello, Sr., or Caldrello Motors either from the sale of a New Jersey dealership or by a refinancing of the mortgage on the defendant's father's personal residence. During these negotiations, the defendant was advised by the attorney who represented Caldrello, Sr., and Caldrello Motors.

On November 7, 1988, the defendant executed and delivered the mortgage deed and a ninety day note to the plaintiff in the amount of $500,000. After closing costs and fees, and with the exception of $40,000 that was paid directly to the defendant, the balance of the loan proceeds went to Caldrello Motors and its creditors.

During the ninety day period in which the defendant expected his father or Caldrello Motors to pay off the note, no such action was taken. The New Jersey dealership was never sold, and none of the proceeds from that dealership or from a $500,000 down payment made on the dealership were applied to the defendant's loan. The loan committee of the plaintiff rejected a proposal to refinance the home of the defendant's father, and although another bank eventually did refinance that home, none of these funds were applied to the defendant's loan.

On November 30, 1988, Brown agreed with Caldrello, Sr., to extend the time for repayment of the defendant's loan for an additional year. Brown assumed that the defendant had knowledge of this extension agreement. The defendant maintains that he was never aware of the agreement. Caldrello, Sr., and Caldrello Motors made monthly interest payments on the note through July, 1989. At that time, interest payments ceased. On September 18, 1989, the defendant informed the plaintiff that he denied any liability for the loan. The plaintiff responded with a demand for payment in full, and this foreclosure action ensued.

I

The defendant first claims that the trial court improperly granted the motion to strike his special defense of misapplication of funds. The defendant first filed his answer and special defenses on February 22, 1990. The plaintiff filed a motion to strike on February 13, 1991,

which was granted by the trial court on April 17, 1991. On April 23, 1991, the defendant filed a new answer, special defenses and counterclaim. The plaintiff moved to strike these special defenses on June 11, 1991, and the trial court ordered the special defenses stricken on September 3, 1991.

The defendant's argument that his special defense of misapplication of funds was improperly stricken focuses on the trial court's April 17, 1991 ruling. We do not address this claim. With the filing of a new answer and special defenses on April 23, 1991, the defendant supplanted the original answer and special defenses. As a result, rulings on the original pleading cannot be the subject of appeal. See *Wesley* v. *DeFonce Contracting Corp.*, 153 Conn. 400, 404–405, 216 A.2d 811 (1966); *P & L Properties, Inc.* v. *Schnip Development Corp.*, 35 Conn. App. 46, 49, 643 A.2d 1302, cert. denied, 231 Conn. 913, 648 A.2d 155 (1994). Thus, we review only the trial court's granting of the motion to strike the special defenses filed April 23, 1991.

Turning to the trial court's order striking the defendant's special defenses filed April 23, 1991, we find the record inadequate to review this claim. The trial court did not issue a memorandum of decision on the plaintiff's motion to strike the special defenses. The defendant has not requested an articulation of the basis for the trial court's denial of this motion pursuant to Practice Book § 4051. In the absence of an adequate record on which to review the defendant's claim, we decline to address this issue. See *Bank of Boston Connecticut* v. *Schlesinger*, 220 Conn. 152, 154 n.2, 595 A.2d 872 (1991).

II

The defendant next claims that the trial court improperly found that CUTPA had not been violated. The defendant specifically complains of the plaintiff's issu-

ing a check payable to "Glenn Gordon, attorney for Joseph Caldrello, Sr., and Joseph Caldrello II" and directing Gordon to negotiate the amount of the check, which Gordon did without the defendant's knowledge and without turning over any of the funds to the defendant. The defendant argues that this conduct constitutes a per se violation of CUTPA.

There is no evidence in the record on appeal that the trial court ever addressed this claim. The defendant's counterclaim, where violations of CUTPA are alleged, does not contain any reference to the drafting or negotiating of the payment to Gordon. The trial court's comprehensive memorandum of decision contains no reference to any of the facts surrounding the drafting or negotiating of this payment and contains no legal analysis of this claim.

It is not our practice to review claims that were not brought to the attention of the trial court. See Practice Book § 4185. Although Practice Book § 4185 allows this court, in the interests of justice, to review plain error that was not brought to the attention of the trial court, this claim does not warrant such review. "In civil cases, [p]lain error is properly reserved for those extraordinary situations where the error is so obvious that the fairness and integrity of and public confidence in the judicial process would be impaired were we to fail to address an issue that was not raised or preserved at trial." (Internal quotation marks omitted.) *Lynch* v. *Granby Holdings, Inc.*, 230 Conn. 95, 98, 644 A.2d 325 (1994). This is not such a case. Accordingly, we decline to review this alleged violation of CUTPA that was not raised in the trial court. See *Yale University* v. *Blumenthal*, 225 Conn. 32, 36 n.4, 621 A.2d 1304 (1993).

## III

The defendant's final claim is that the trial court improperly concluded that the plaintiff's secret exten-

sion of the loan term, arranged through the defendant's father, did not violate CUTPA. We disagree.

General Statutes § 42-110b (a) provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."[1] The determination of whether an act or practice is unfair in violation of CUTPA revolves around the application of the "cigarette rule." This rule involves three inquiries: "(1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [competitors or other businessmen]. *Conaway* v. *Prestia*, [191 Conn. 484, 492–93, 464 A.2d 847 (1983)], quoting *FTC* v. *Sperry & Hutchinson Co.*, 405 U.S. 233, 245–45 n.5, 92 S. Ct. 898, 31 L. Ed. 2d 170 (1972) [*Sperry*] . . . . *McLaughlin Ford, Inc.* v. *Ford Motor Co.*, 192 Conn. 558, 567–68, 473 A.2d 1185 (1984).

"All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. . . ." (Citations omitted; internal quotation marks omitted.) *Cheshire Mortgage Service, Inc.* v. *Montes*, 223 Conn. 80, 105–106, 612 A.2d 1130 (1992).

In finding that there was no CUTPA violation in the extension of the term to pay off the loan, the trial court, as fact finder, "conclude[d] that *the defendant knew* that Caldrello, Sr., and Caldrello Motors were unwilling or

---

[1] The banking industry is governed by CUTPA. *Normand Josef Enterprises, Inc.* v. *Connecticut National Bank*, 230 Conn. 486, 521, 646 A.2d 1289 (1994).

unable to repay him from either the refinancing or the sale of the New Jersey dealership" and "further conclude[d] that *the defendant consented* to his father's request for an extension; *hence, no concealment was proven.*" (Emphasis added.) It was only after making this express finding that the trial court went on to state, "*Even if* the defendant was in fact unaware of the request for the extension, it is difficult to perceive how this harmed the defendant or caused him ascertainable loss." (Emphasis added.)

There is nothing offensive to public policy, immoral, unethical, oppressive, or unscrupulous about extending the time for the repayment of a loan. Thus, the defendant's challenge is to the trial court's factual finding that the extension of the loan term was effected without his knowledge and consent. "[W]here the factual basis of the court's decision is challenged, we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Internal quotation marks omitted.) *Neri v. Neri*, 35 Conn. App. 812, 819, 647 A.2d 1, cert. denied, 231 Conn. 916, 648 A.2d 154 (1994); see also *Einbender v. Board of Tax Review*, 217 Conn. 240, 242, 584 A.2d 1188 (1991) (we review trial court's findings of fact only to ascertain whether clearly erroneous).

In reaching its conclusion that the defendant knew of and consented to the extension of the loan term, the trial court found that there had been elaborate negotiations between the defendant, his father and the bank. Furthermore, the trial court found that Brown assumed the defendant knew of the extension agreement. The only evidence in the record inconsistent with finding that the defendant knew of and consented to the extension was the defendant's own testimony. The trial court, as finding of fact, could reasonably have concluded

that this testimony was not credible. See *Gibson* v. *Keebler Co.*, 37 Conn. App. 392, 396, 655 A.2d 1172 (1995). We conclude, therefore, that the trial court's finding that the defendant knew of and consented to his father's request for an extension was not clearly erroneous. Thus, the first two prongs of the cigarette rule are not satisfied.

The trial court also found that even if the defendant was not aware of the extension agreement he was not harmed thereby. The trial court based this finding on the defendant's not having requested that the plaintiff make a demand for repayment within the original ninety day loan term and his not having attempted to collect the amount due on the note from his father during or immediately after the original ninety day loan term. The extension of the loan term was not an obstacle to exercising either of these options. Because the extension of the loan agreement to give the defendant more time to pay off the note did not preclude the defendant from paying off the loan at the original time, there was no harm to the defendant by the extension. The extension, whether secret or not, conferred on the defendant the benefit of having more time to meet his obligation. Therefore, the third prong of the cigarette rule is not satisfied.[2]

The trial court properly concluded that there was no violation of CUTPA by the plaintiff's extension of the term of the loan to the defendant.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[2] The defendant argues that because his father was solvent at the time the extension was made but became insolvent and filed for bankruptcy during the one year extension, the trial court abused its discretion in finding no injury to the defendant under the third prong of the cigarette rule. There are no factual findings by the trial court to support this argument, so we do not address this claim. *Bank of Boston Connecticut* v. *Schlesinger*, supra, 220 Conn. 154 n.2.