[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO STRIKE CUTPA CLAIM FOUNDED ON ALLEGED MISCONDUCT OF ACCOUNTANTS
By way of a three-count revised complaint, dated November 5, 1998, plaintiff, Joseph Nacca, brings this action against defendants, Richard C. Simione (Simione), Anthony P. Scillia (Scillia), Simione, Simione, Scillia Larrow, LLC (S.S.S. L.), Simione Simione (SS) and Scillia Larrow (SL) in negligence, breach of fiduciary duty, as well as unfair, unscrupulous and deceptive business practices under the Connecticut Unfair Trade CT Page 5921 Practices Act (CUTPA). The defendants have moved to strike that part of the revised complaint that alleges a violation of CUTPA. The allegations relevant to the motion to strike are referred to hereinafter.
Nacca alleges that he is a businessman who sought and received professional advice from the defendants. Nacca alleges that S.S.S. L. was a successor business of two other business entities formerly known as Simione Simione and Scillia 
Larrow. These accounting firms provided Nacca with accounting, tax and business advice. The defendant Scillia is a C.P.A. employed at SL, and has rendered accounting services and advice to Nacca since 1994. Nacca further alleges that since 1974, Richard Simione, who is employed at the firm SS, worked as the chief accountant and advisor to Nacca and his businesses, Interstate Pallet Company and Recyclers Consulting Group, Inc. (RCG).
In 1992, Nacca, concerned with the financial dealings of RCG, with the conduct of his partners, and with the perceived financial and criminal problems resulting therein, asked Simione questions about RCG. Nacca suspected that his partners were stealing money from the company and that they were receiving cash and not reporting it. Simione assured Nacca that he was "keeping an eye on things," and was "taking care of the financial aspects of the company." Nacca also alleges that he requested that the firm exercise due diligence and conduct an investigation. These requests, Nacca alleges, "were ignored and/or not properly performed or undertaken."
Nacca later brought suit against his partners at RCG. Simione informed Nacca that neither he, nor his company SS, could act as Nacca's accounting firm because they represented the corporation and the individuals whom Nacca had sued. Simione recommended Scillia and the firm SL. Nacca hired Scillia and SL and asked Scillia to carefully investigate RCG and his business associates because he believed that RCG was going to settle a case with International Business Machines (IBM) in the near future. Scillia told him that "no such large settlement would be forthcoming in the near future."
Plaintiff Nacca alleges that he settled his claim against RCG for $845,000 dollars based upon advice from Scillia and S L that RECG was unable to pay more than $900,000. Plaintiff alleges also that less than one month later he discovered that RCG had CT Page 5922 settled a claim against IBM for about 4 million dollars. The plaintiff further alleges that "had [he] known the correct and accurate statutes of the IBM case through defendant Scillia's exercise of proper due diligence and other matters not revealed to him or disclosed by defendant Scillia, he never would have agreed to settle the case for the amount of money that he did since the company was obviously worth much more and the defendants in said case had the ability to pay much more in settlement as RCG's value was apparently much greater than represented." (Para. 11)
Nacca subsequently discovered that he was exposed to civil and criminal liability, and that the "individual defendants and their companies failed to advise [him] properly and acted against his interest relative to his former partners and he has suffered both civil and criminal liability of a significant nature due to the same." Additionally, Nacca alleges that "the defendants . . . committed their negligent and improper acts continually over the course of many years through 1994 and fraudulently concealed [Nacca's] claims against both the individual defendants and their companies the defendant entities." He further maintains that the firms SS and SL have now merged, and that the defendant, S.S.S. L., as successor, is liable.
The defendants' motion to strike the third count of the revised complaint is predicated upon their claim that allegations of professional malpractice do not fall within the ambit of the Connecticut Unfair Trade Practices Act (CUTPA).[1]
A motion to strike tests the legal sufficiency of a pleading. Practice Book § 10-39; Novametrix Medical Systems, Inc. v. BOCGroup, Inc., 224 Conn. 210, 214-15, 618 A.2d 25 (1992). To maintain his claim under CUTPA, Nacca must plead "with particularity to allow evaluation of the legal theory upon which the claim is based." S.M.S. Textile Mills, Inc. v. Brown.Jacobson, Tillinghast, Lahan and King, P.C., 32 Conn. App. 786,797, 631 A.2d 340 (1993), cert. denied, 228 Conn. 903,634 A.2d 296 (1993). Thus, to determine the legal sufficiency of the CUTPA count, "[the court takes] the facts to be those alleged in the complaint . . . and [construes] the complaint in the manner most favorable to sustaining its legal sufficiency." Pamela B. v.Ment, 244 Conn. 296, 308, 709 A.2d 1089 (1998).
General Statutes § 42-110b (a) states that. "[n]o person shall engage in unfair methods of competition and unfair or CT Page 5923 deceptive acts or practices in the conduct of any trade or commerce." General Statutes § 42-110b (a). The legislature enacted CUTPA to protect the public from unfair trade or commercial practices. Thames River Recycling, Inc. v. Gallo,50 Conn. App. 767, 794-95, 720 A.2d 242 (1998). In determining whether a consumer practice is unfair under CUTPA, the Connecticut courts have adopted the "cigarette rule." See A-GFoods, Inc. v. Pepperidge Farm, Inc., 216 Conn. 200, 215,579 A.2d 69 (1990). Under this three-part test, a practice is deemed unfair when (1) "the practice . . . offends public policy as it has been established by statute, the common law, or otherwise — whether . . . it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [or] (3) whether it causes substantial injury to consumers [(competitors or other businessmen)]." (Brackets in original; internal quotation marks omitted.) A-G Foods, Inc. v.Pepperidge Farm, Inc., supra, 216 Conn. 215. "All three criteria do not need to be satisfied to support a finding of unfainess. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. . . ." (Internal quotation marks omitted.) Norwich SavingsSociety v. Caldrello, 38 Conn. App. 859, 865, 663 A.2d 415
(1995), cert. denied, 235 Conn. 927, 667 A.2d 553 (1995).
The defendants argue that Nacca's claim under CUTPA must fail because he has not alleged an unfair or deceptive act with respect to the defendants' commercial or entrepreneurial aspect of its accounting practice. The defendants rely on Haynes v. YaleNew Haven Hospital to bolster their argument. In that case, the Connecticut Supreme Court determined that CUTPA does not cover claims of professional negligence unless the plaintiff alleges a violation of the "entrepreneurial or business aspect of the profession . . . ." Haynes v. Yale-New Haven Hospital,243 Conn. 17, 38, 699 A.2d 964 (1997).
In Haynes v. Yale-New Haven Hospital, the plaintiff brought an action against Yale-New Haven Hospital alleging that the defendant failed to exercise the necessary standard of emergency room care to the decedent. In support of their claim, the plaintiff asserted that the emergency department was inadequately staffed and that the existing staff was inadequately trained. The plaintiff concluded that this constituted unfair and deceptive practices in violation of CUTPA. The defendants moved for summary judgment and the trial court granted the motion, reasoning that CT Page 5924 the plaintiff could not recast a professional malpractice action into a CUTPA claim.
Observing that it had previously held that medical services fell within the scope of CUTPA's definition of "trade or commerce," the Supreme Court emphasized that the services at issue did not relate to the "entrepreneurial or business aspects of providing medical services" to the decedent. Haynes v.Yale-New Haven Hospital, 243 Conn. 32-33. Affirming the trial court's decision, the Supreme Court explained that the plaintiff's allegations — harm resulting from the failure to meet the standard of care — did not involve a CUTPA-based remedy, but, rather, involved a claim of professional malpractice. The court reasoned that "[m]edical malpractice claims recast as CUTPA claims cannot form the basis for a CUTPA violation. To hold otherwise would transform every claim for medical malpractice i nto a CUTPA claim." Id., 38.
The defendants here argue that accounting services, like the medical or legal profession, constitute professional services, which require this court to apply the rule set forth in Haynes. See General Statutes § 34-101 (17) (including accounting within the definition of "[p]rofessional service"). Only one case has discussed the application of Haynes to the accounting profession. In Advest Group, Inc. v. Arthur Andersen, LLP, the Superior Court, Aurigemma, J., determined that "accounting services, like law and medicine, is a learned profession that is not interchangeable with other commercial endeavors." Advest Group,Inc. v. Arthur Andersen, LLP, Superior Court, judicial district of Hartford at Hartford, Docket No. 571417, (July 28, 1998) (22 Conn. L. Rptr. 520 Aurigemma, J.). Accordingly, that court concluded that only "claims arising out of the commercial or entrepreneurial aspects of accounting should fall under CUTPA." Id., 525.
The plaintiffs Advest Group, Inc. had brought an action against Arthur Andersen, LLP, an accounting firm, in pertinent part, for unfair and deceptive trade practices under CUTPA.Advest Group, Inc. v. Arthur Andersen, LLP, supra,22 Conn. L. Rptr. 521. The plaintiffs maintained that the defendant engaged in unfair and deceptive trade practices by concealing an "egregious conflict of interest" while providing accounting services to the plaintiffs, for "knowingly and recklessly disregarding [the] precarious financial condition [of the business] and failing to disclose that condition to the CT Page 5925 plaintiffs." Id., 522. The defendant moved to strike the CUTPA claim, arguing that claims of professional negligence do not support a cause of action under CUTPA.
The court first determined that the rule in Haynes applied to claims of professional negligence against an accounting firm. The court reasoned that accounting services are more similar to the practice of law and medicine than other commercial endeavors because "[l]ike attorneys and health care providers, accountants are extensively regulated by a state agency other than the Department of Consumer Protection." Id., 525. The court then granted the defendant's motion to strike, concluding that the plaintiffs failed to allege any violation of the commercial or entrepreneurial aspects of the defendant's accounting practice.
Because Advest and Haynes apply to the present CUTPA claim, Nacca must allege some violation of the commercial or entrepreneurial aspects of the defendants' accounting profession to survive the defendants' motion to strike.
The revised complaint does not articulate generally nor with any degree of particularity what conduct of which defendant is allegedly fraudulent. Nor does the revised complaint set out what allegedly wrongful conduct of which defendant is inextricably associated with the entrepreneurial or commercial aspect of the accounting profession. Particularity is the sine qua non of avoiding the motion to strike filed in this case. See S.M.S.Textile Mills, Inc. v. Brown Jacobson, supra.
For the foregoing reasons, the above motion to strike is granted.
Clarance J. Jones, Judge