DONALD F. LoPRESTO *v.* STATE EMPLOYEES RETIREMENT COMMISSION (14965)

PETERS, C. J., and BERDON, NORCOTT, KATZ and PALMER, Js.

Argued January 3—decision released July 25, 1995

*Thomas B. Wilson*, with whom, on the brief, was *Raymond L. Baribeault, Jr.*, for the appellant (plaintiff).

*Robert A. Whitehead*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Charles A. Overend*, assistant attorney general, for the appellee (defendant).

PALMER, J. The sole issue presented by this certified appeal is whether the plaintiff, Donald F. LoPresto, a retired state police officer, is entitled to hazardous duty retirement credit under the State Employees

Retirement Act (act)[1] for his prior service as a municipal police officer. The defendant, the state employees retirement commission (commission), refused to include the plaintiff's municipal police service in its calculation of his monthly hazardous duty retirement income, and the plaintiff petitioned the commission for a declaratory ruling pursuant to General Statutes § 4-176.[2] The commission denied the plaintiff's claim, and he appealed to the Superior Court. The trial court, *Maloney, J.*, concluded that the plaintiff was entitled to the credit and, accordingly, sustained the plaintiff's appeal. The commission appealed to the Appellate Court, which reversed the judgment of the trial court. *LoPresto* v. *State Employees Retirement Commission*, 34 Conn. App. 510, 642 A.2d 728 (1994). We granted the plaintiff's petition for certification to appeal,[3] and we now reverse the judgment of the Appellate Court.

The facts are not in dispute. The plaintiff retired on March 1, 1992, after having served more than twenty years as a state trooper within the public safety department of the division of state police. Due to the nature

[1] The act may be found at chapter 66 of the General Statutes, §§ 5-152 through 5-192x.

[2] General Statutes § 4-176 provides in pertinent part: "(a) Any person may petition an agency, or an agency may on its own motion initiate a proceeding, for a declaratory ruling as to the validity of any regulation, or the applicability to specified circumstances of a provision of the general statutes, a regulation, or a final decision on a matter within the jurisdiction of the agency."

[3] We granted certification limited to the following issue: "Did the Appellate Court improperly conclude that as a matter of law, 'Connecticut State Service' as used in § 5-173 of the General Statutes is limited to actual state service and does not include prior municipal service that is expressly deemed to be state service under § 5-192b (b)?" *LoPresto* v. *State Employees Retirement Commission*, 230 Conn. 911, 645 A.2d 1016 (1994). Subsequent to our grant of certification, the commission raised the following alternate ground for affirmance pursuant to Practice Book § 4140 (a): "Should the Appellate Court's decision be upheld on the alternate ground that the plaintiff, as a member of the hazardous duty retirement system, is not entitled to § 5-192b (b) retirement credit?"

and duration of his state service, the plaintiff qualified for hazardous duty retirement pursuant to General Statutes § 5-173,[4] and he selected that retirement

[4] General Statutes § 5-173 provides: "STATE POLICE; CORRECTIONAL INSTITUTION GUARDS AND INSTRUCTORS; EMPLOYEES AT WHITING FORENSIC INSTITUTE; HAZARDOUS DUTY MEMBERS OF TIER I. RETIREMENT OF COMMISSIONER OR DEPUTY COMMISSIONER OF PUBLIC SAFETY BEFORE FORTY-SEVENTH BIRTHDAY. (a) A state policeman in the active service of the division of state police within the department of public safety, or any person who is engaged in guard or instructional duties at the Connecticut Correctional Institution, Somers, the Connecticut Correctional Institution, Enfield-Medium, the Carl Robinson Correctional Institution, Enfield, the John R. Manson Youth Institution, Cheshire, the Connecticut Correctional Institution, Niantic, the Connecticut Correctional Center, Cheshire and the community correctional centers, or any person exempt from collective bargaining who is engaged in custodial or instructional duties within the department of correction, or any person who is an employee of the Whiting Forensic Institute with direct and substantial patient contact, or any member of tier I who has been designated as a hazardous duty member pursuant to an applicable collective bargaining agreement, who has reached his forty-seventh birthday and completed at least twenty years of hazardous duty service for the state or service as a state policeman or as guard or instructor at said correctional institutions or correctional centers, or service in a custodial or instructional position within the department of correction which is exempt from collective bargaining, or as an employee of the Whiting Forensic Institute or its predecessor institutions, shall be retired on his own application or on the application of the commissioner of public safety or the commissioner of correction, as the case may be.

"(b) On or after October 1, 1982, each such person shall receive a monthly retirement income equal to one-twelfth of (1) fifty per cent of his base salary, as defined in subsection (b) of section 5-162, for such twenty years of service, plus (2) two per cent of his base salary for each year, taken to completed months, of Connecticut state service in excess of twenty years, except that any such person who is both a member of the division of state police within the department of public safety and a member of part B shall receive a permanently reduced retirement income upon reaching the age of sixty-five or, if earlier, upon receipt of Social Security disability benefits or, for any such state policeman, upon receipt of benefits under subsection (d) of section 5-142. Any such state police member shall have his monthly retirement income reduced by an amount equal to one-twelfth of one per cent of four thousand eight hundred dollars multiplied by the number of years of state service, taken to completed months.

"(c) Any such person who, while so employed, was granted military leave to enter the armed forces, as defined by section 27-103, and who, upon his discharge and within ninety days, returned to such service, shall be granted

option.[5] Under § 5-173 (b), the plaintiff, as a state employee with at least twenty years of hazardous duty

retirement credit for any period of service in time of war, as defined by said section, and for military service during a national emergency declared by the President of the United States on and after September 1, 1939, toward the required minimum of twenty years service; and any such person may be granted credit for any such war service prior to such employment upon payment of contributions and interest computed in accordance with subsection (b) of section 5-180, but such service shall not be counted toward the minimum service requirement of twenty years.

"(d) Any such person who, after retiring from hazardous duty as designated pursuant to a collective bargaining agreement or from the division of state police or the employ of the Connecticut Correctional Institution, Somers, the Connecticut Correctional Institution, Enfield-Medium, the Carl Robinson Correctional Institution, Enfield, the John R. Manson Youth Institution, Cheshire, the Connecticut Correctional Institution, Niantic, the Connecticut Correctional Center, Cheshire or a community correctional center, or the Whiting Forensic Institute, as the case may be, is employed by any other state agency may elect to receive the retirement income to which he was entitled at the time of his retirement from such hazardous duty or as a state policeman or employee of the correctional institution or correctional center or forensic institute when his employment in such other agency ceases, but he shall not, in that case, be entitled to any retirement income by reason of service in such other agency except as provided in subsection (g) of this section.

"(e) Notwithstanding the provisions of subsection (a) of this section, any state policeman who serves as commissioner or deputy commissioner of public safety and whose position as commissioner or deputy commissioner is terminated, abolished or eliminated for any reason or who otherwise leaves such position and who has completed twenty years of service as a state policeman but who has not reached his forty-seventh birthday, shall be entitled to a retirement income, in accordance with subsection (b) of this section.

"(f) A member who has completed twenty years of hazardous duty service under this section, but who leaves such service on or after October 1, 1982, but prior to reaching his forty-seventh birthday shall, upon his own application be entitled to the benefits provided in subsection (b) of this section at any time after reaching his forty-seventh birthday.

"(g) On and after October 1, 1982, an employee who has met the twenty-year minimum service requirement and is thus eligible for benefits under this section shall have any other Connecticut state employment recognized in calculating the amount of his benefits."

[5] The plaintiff was also eligible to retire under the nonhazardous duty provisions of the act that are applicable to state employees generally. See General Statutes § 5-162 et seq.

service, was eligible to retire upon his forty-seventh birthday with a monthly retirement income equal to one twelfth of (1) 50 percent of his base salary, as defined by General Statutes § 5-162 (b), for his twenty years of hazardous duty service, plus (2) 2 percent of his base salary for each year of "Connecticut state service" in excess of twenty years.

Prior to his employment with the state police, the plaintiff had served for five years as a municipal police officer in the town of Stonington, during which time he had contributed to the municipal employees' retirement fund.[6] The plaintiff had withdrawn his contributions from the municipal retirement fund, however, after his resignation from the Stonington police department. Because he intended to seek hazardous duty retirement credit for his prior municipal employment under General Statutes § 5-192b (b),[7] the plaintiff, in

---

[6] See General Statutes §§ 7-425 through 7-459a.

[7] General Statutes § 5-192b provides: "CREDIT FOR PREVIOUS MEMBERSHIP IN A MUNICIPAL RETIREMENT SYSTEM. (a) Any person who became a member of the state employees retirement system and who previously was a member of the Connecticut municipal employees' retirement system shall receive credit for the purpose of retirement under the provisions of this chapter for the period of his service with such municipality, provided there shall be transferred to the State Employees Retirement Fund from the Connecticut Municipal Employees' Retirement Fund, on application of a state employee who is a member of tier I, the entire amount paid into the Connecticut Municipal Employees' Retirement Fund by the employee as a result of the service of such employee, plus interest at the rate being paid by the Connecticut Municipal Employees' Retirement Fund from which such amount is transferred from the date of each payment into such fund to the date such employee became a member of the State Employees Retirement System, such amount to be computed by the State Retirement Commission. No transfer of municipal employee contributions and interest shall be required whenever a member of the tier II plan applies for such retirement credit.

"(b) On or before the first of the month following three months after June 28, 1985, any member of the tier I plan in the state employees retirement system who was previously a member of the Connecticut municipal employees' retirement system and who, pursuant to the terms of section 7-440, withdrew all his contributions in the Municipal Employees' Retirement Fund

1984, applied to the commission to purchase his municipal service retirement credit.[8] The plaintiff claimed that as a member of the state employees retirement system (state retirement system),[9] he was entitled to

upon leaving municipal employment shall be credited, for retirement purposes under this chapter, with such period of prior municipal service upon payment into the State Employees Retirement Fund of an amount equal to the total of all contributions refunded to him from the Municipal Employees' Retirement Fund plus five per cent interest on such contributions from the effective date of his withdrawal from the municipal fund to the date of his application for credit under this subsection. Such municipal service shall be considered to be active state service for the purposes of this chapter.

"(c) Any member of the state employees retirement system who has prior service in a municipality, or a department of a municipality, which has not accepted the provisions of part II of chapter 113 shall receive credit for the purpose of retirement under the provisions of this chapter for the period of such service, or any portion thereof, if he complies with the requirements of either subdivision (1) or subdivision (2) of this subsection. (1) Such member may purchase credit for such service upon payment to the State Employees Retirement Fund of either two or five per cent, as appropriate, of his municipal salary for the period of such service, plus an amount determined by the Retirement Commission as necessary to fund the increased benefits payable by reason of such purchase with interest at the rate of six and one-half per cent, compounded annually, on such payment. (2) Such member may obtain credit for such service upon transfer of the entire amount paid into a municipal retirement fund by the member and the municipality during the period of such service including any earned interest, and payment of an amount determined by the Retirement Commission as necessary to fund the increased benefits payable by reason of such credit, to the State Employees Retirement Fund. Where required by a municipal ordinance or charter provision, the comptroller may enter into a reciprocal agreement with a municipality in order to effect a transfer of funds under this subdivision. No credit shall be granted under this subsection for any period of service for which a retirement benefit is being paid by any governmental unit or where such grant would result in multiple service credit for the same period of service."

[8] Under § 5-192b (b), a state employee who has withdrawn his or her contributions to the municipal employees' retirement fund and who wishes to obtain state retirement credit for his or her prior municipal service must pay into the state employees retirement fund a sum equal to the amount withdrawn from the municipal employees' retirement fund, plus 5 percent interest from the date of withdrawal. See footnote 7.

[9] It is undisputed that the plaintiff is a tier I member of the state retirement system. The tier I retirement plan, set forth at General Statutes §§ 5-157 through 5-192d, applies to former state employees who, like the

hazardous duty retirement credit for his prior municipal employment because that employment, deemed to be "active state service" by § 5-192b (b),[10] constitutes "Connecticut state service" in excess of twenty years under § 5-173 (b). The commission advised the plaintiff, however, that his prior municipal service did not qualify as "Connecticut state service" within the meaning of § 5-173 (b) and, accordingly, that his five years of municipal employment would not be included in the calculation of his monthly hazardous duty retirement income.[11] The commission further informed the plaintiff that it would not process his request to purchase credit for his municipal service unless the plaintiff notified the commission that he intended to retire under the nonhazardous duty provisions of the act.[12]

In May, 1990, the plaintiff submitted a written claim to the commission pursuant to General Statutes § 5-155a (j)[13] seeking credit for his five years of munic-

---

plaintiff, joined the state retirement system prior to July 1, 1984. In 1983, the legislature, pursuant to a pension agreement negotiated between the state and the bargaining representative for various state employee unions, enacted a tier II state employee retirement plan; see Public Acts 1983, No. 83-533, codified at General Statutes § 5-192e et seq.; which generally governs the retirement of state employees who first joined the state retirement system after July 1, 1984.

[10] Under § 5-192b (b), municipal service is considered to be "active state service" for the purposes of §§ 5-152 through 5-192x, which comprise the act. State retirement credit for prior municipal service under § 5-192b (b) is available to tier I members of the state retirement system who were previously members of the Connecticut municipal employees' retirement system and who had withdrawn their contributions to the municipal employees' retirement fund. See footnote 8.

[11] The commission did not notify the plaintiff of its decision until 1989.

[12] There is no dispute that the plaintiff would be entitled to credit for his prior municipal service under the nonhazardous duty provisions of the act.

[13] General Statutes § 5-155a (j) provides: "CLAIMS PROCEDURE. Any claim for a pension or any other benefit which may become available in accordance with the provisions of this chapter may be submitted to the commission provided it is submitted in writing. Any such claim will be reviewed and decided by the commission. The claimant shall be advised of the processing status of his claim upon reasonable request."

ipal service in the determination of his monthly hazardous duty retirement payments. Before rendering a decision on the plaintiff's claim, the commission requested legal advice from the office of the state attorney general. In response to this request, assistant attorney general William J. McCullough furnished the commission with a memorandum in which he concluded that the commission's decision to exclude the plaintiff's prior municipal service from the calculation of his monthly hazardous duty income "appears to be a reasonable one."[14] Specifically, McCullough opined that the history of the act indicates that the legislature did not intend that hazardous duty retirees under § 5-173 would be eligible to receive any of the supplementary retirement credits available to state retirement system members generally, including the credit for prior municipal service under § 5-192b. The commission subsequently denied the plaintiff's claim for municipal service credit in the calculation of his hazardous duty retirement income.

Thereafter, the plaintiff petitioned the commission pursuant to § 4-176 (a) seeking a declaratory ruling on his claim that he was entitled to hazardous duty retirement credit for his prior municipal police service. The commission issued a declaratory ruling rejecting the plaintiff's claim for the reasons set forth in the McCullough memorandum, and the plaintiff appealed from the commission's ruling to the Superior Court pursuant to General Statutes § 4-183.[15] The trial court sustained the plaintiff's appeal, concluding that he was entitled to credit for his prior municipal employment in the cal-

[14] McCullough noted that the view expressed in the memorandum was his own "informal opinion" and did "not constitute an opinion of the Attorney General."

[15] The commission's declaratory ruling constituted a "final decision" for purposes of appeal under § 4-183. See General Statutes § 4-166 (3) (B); cf. *Derwin* v. *State Employees Retirement Commission*, 234 Conn. 411, 661 A.2d 1025 (1995).

culation of his monthly hazardous duty retirement income because his municipal service, deemed "active state service" for the purpose of the act by § 5-192b (b), qualified as "Connecticut state service" in excess of twenty years within the meaning of § 5-173 (b).

The commission appealed from the judgment of the trial court to the Appellate Court, which concluded that "Connecticut state service" under § 5-173 (b) includes only actual state service and not municipal service deemed to be state service by § 5-192b (b). Accordingly, the Appellate Court held that the plaintiff was not entitled to hazardous duty retirement credit for his prior municipal employment and reversed the judgment of the trial court. This appeal followed.

In this appeal, the plaintiff urges us to reverse the judgment of the Appellate Court, claiming that the trial court correctly concluded that his municipal service, because it is deemed to be state service for the purposes of the act by § 5-192b (b), constitutes "Connecticut state service" within the meaning of § 5-173 (b). The commission, on the other hand, contends that the history of the act clearly demonstrates that § 5-173 establishes a retirement system for hazardous duty employees that is entirely separate and distinct from the remainder of the state retirement system and, accordingly, that those employees who opt to retire under § 5-173 are not eligible to receive any of the supplemental retirement credits available to other state retirement system retirees, including the credit for prior municipal service under § 5-192b.[16] The commission further contends that even if we disagree with its claim that the plaintiff is precluded from obtaining credit for his prior municipal service because § 5-173

---

[16] This is the commission's alternate ground for affirmance. See footnote 3. We were informed by the commission at oral argument, however, that it relies primarily on this ground for affirmance of the judgment of the Appellate Court.

comprises a hazardous duty retirement system completely separate from the provisions of the act applicable to other state employees, the Appellate Court properly concluded that, as a matter of statutory construction, "Connecticut state service" under § 5-173 (b) is not the equivalent of "active state service" under § 5-192b. We agree with the plaintiff's interpretation of the act and, accordingly, we reverse the judgment of the Appellate Court.

I

The starting point for our analysis of the plaintiff's claim is § 5-173, which governs the plaintiff's tier I hazardous duty retirement. Because the plaintiff had reached his forty-seventh birthday and had completed more than twenty years of hazardous duty service as of the date of his state retirement in satisfaction of § 5-173 (a), the commission acknowledges that he is entitled to a monthly retirement income of not less than one twelfth of 50 percent of his base salary under § 5-173 (b).

The plaintiff further claims, however, that he is also entitled to additional monthly retirement income for his prior employment with the town of Stonington. Specifically, he contends that because his prior municipal service constitutes state service for the purposes of the act under § 5-192b (b), that employment must be considered "Connecticut state service" in excess of twenty years within the meaning of § 5-173 (b). Accordingly, the plaintiff maintains that he is entitled to an additional monthly retirement payment equal to one twelfth of 2 percent of his base salary for each of his five years of municipal service, for a total monthly retirement income of one twelfth of 60 percent of his base salary. The commission argues, however, that the plaintiff is not eligible to receive the municipal service credit under § 5-192b, or for that matter any of the other statutory

credits available to tier I retirees generally,[17] because, in the commission's view, the history of the act establishes that § 5-173 constitutes a separate, self-contained "hazardous duty retirement system" that is completely independent of the retirement system applicable to other state employees. Although we agree with the commission that state police officers who retired under the statutory precursors of § 5-173 were not entitled to certain supplemental retirement credits that were generally available to other state retirees, this fact alone does not persuade us that the plaintiff may not receive hazardous duty retirement credit for his prior municipal service under the current provisions of the act.

The plain language of the act, to which we first turn, squarely supports the conclusion that the plaintiff is entitled to credit for his municipal service in the calculation of his hazardous duty retirement income. Under § 5-192b (b), the plaintiff's prior municipal employment is deemed to be "active state service" for retirement purposes and, as the plaintiff notes, the act contains no indication that such service does not in turn constitute "Connecticut state service" within the ambit of § 5-173 (b).[18] If the legislature intended to exclude the expanded definition of municipal service enumerated in § 5-192b from the purview of § 5-173 (b), it could easily have done so. See *Howard* v. *Commissioner of Correction*, 230 Conn. 17, 22, 644 A.2d 874 (1994); *Caulkins* v. *Petrillo*, 200 Conn. 713, 719, 513 A.2d 43 (1986). On the contrary, however, subsection (b) of § 5-192b, which was enacted the year after the legislature amended § 5-173 to allow hazardous duty retire-

---

[17] See, e.g., General Statutes §§ 5-174 (retirement credit for educational leave) and 5-174a (retirement credit for sick leave); footnotes 20 and 21.

[18] For a further discussion of the construction of §§ 5-173 and 5-192b, see part II of this opinion.

ment credit for "Connecticut state service,"[19] expressly provides that the municipal service enumerated therein "shall be considered to be active state service *for the purposes of . . . chapter [66]"* (emphasis added), which comprises the entire act, including § 5-173 (b). See footnote 10. In defining municipal service as state service for the purposes of the act, the legislature presumably acted with knowledge of § 5-173 (b) and with the intent to create a consistent body of law. See, e.g., *Kinney* v. *State*, 213 Conn. 54, 65, 566 A.2d 670 (1989); *Caulkins* v. *Petrillo*, supra, 718. Furthermore, under § 5-192b (b), municipal service credit is broadly available to *"any member* of the tier I plan in the state employees retirement system who was previously a member of the Connecticut municipal employees' retirement system" (emphasis added), and who, like the plaintiff, has tendered to the state employees retirement fund an amount equal to the payments previously withdrawn from the municipal employees' retirement fund, with interest. Finally, there is nothing in the words or the phraseology of the act to suggest that hazardous duty retirees are precluded from receiving supplemental retirement credit, such as that authorized under General Statutes §§ 5-174,[20] 5-174a[21] and 5-192b,

[19] Section 5-192b (b) was enacted in 1984; Public Acts 1984, No. 84-447, §§ 1, 3; whereas § 5-173 (b) was amended to allow retirement credit for "Connecticut state service" in 1983. Public Acts 1983, No. 83-533, §§ 17, 54.

[20] General Statutes § 5-174 provides: "EDUCATIONAL LEAVE. A member who is or has been granted a leave of absence without pay to pursue a course of study which is connected with the work of the agency and which is for the purpose of increasing his proficiency in his position shall be entitled to credit towards retirement for the period of such leave if he makes his retirement contributions for each year of such leave in an amount equal to five per cent of his salary rate at the time he was granted leave, with interest at the rate of five per cent per year."

[21] General Statutes § 5-174a provides: "SICK LEAVE. A member of the state employees retirement system who is or has been granted a leave of absence without pay for the protection or improvement of his health shall be entitled to credit toward retirement for the period of such leave, but not to exceed twelve months within a five-year period, if he makes retire-

when those credit provisions are, by their express language, equally applicable to hazardous duty employees.

Notwithstanding the literal language of the act, the commission contends that hazardous duty employees are not entitled to any of the supplemental retirement credits available to other state retirement system members, including the credit for prior municipal service under § 5-192b, because the history of the act convincingly demonstrates the intent of the legislature that the nonhazardous duty provisions of the act shall not be applicable to hazardous duty employees retiring under § 5-173. According to the commission, this conclusion is compelled by two amendments to the act, one in 1961; Public Acts 1961, No. 494; and a second in 1983. Public Acts 1983, No. 83-533. We do not agree.

In order to place the commission's claim in proper context, it is helpful to review briefly some of the principal statutory precursors of § 5-173, beginning with chapter 210 of the 1919 Public Acts, wherein the legislature first extended retirement benefits to state employees.[22] In 1925, the legislature enacted chapter 215 of the 1925 Public Acts, codified at General Statutes (1930 Rev.) § 170,[23] which established special

ment contributions for each month of such leave in an amount equal to one-twelfth of five per cent of his salary rate at the time he was granted leave, with interest at the rate of five per cent per year from the date when any such contributions would have been due to the date of payment."

[22] Under chapter 210 of the 1919 Public Acts, state employees with thirty years of service were eligible to retire at age sixty-five, and those employees with twenty-five years of service were eligible to retire at age seventy. Such retirees were entitled to a retirement income of one-half of the average of their wages for the last five years of their state service.

[23] General Statutes (1930 Rev.) § 170 provided in relevant part: "Any person who shall have been in the service of the state thirty years, or any person who shall have served in any department of the state twenty years or more in the aggregate and reached the age of seventy years, may be retired by the board of finance and control, and thereafter shall receive a salary equal to one-half of his average salary for the five years next preceding such retirement. Any person who shall have been in the department

retirement criteria for state police retirees that were more favorable than the eligibility requirements applicable to state employees generally. State police officers who elected to retire under the special provisions of § 170, however, were not allowed retirement credit for any periods of state or nonstate service other than as a state police officer.

In 1953, the legislature passed No. 270 of the 1953 Public Acts, codified at General Statutes (Sup. 1953) § 115c,[24] which established a minimum retirement age of forty-seven for state police officers and reduced their length of service requirement to twenty years. Although the 1953 amendment authorized the retirement of state police officers after only twenty years of service, their monthly retirement income was determined, as it had been prior to 1953, under the section that governed the calculation of retirement benefits for all state employees, General Statutes (Sup. 1953) § 114c. Under § 114c, state retirees received one twelfth of 50 percent of their average salary, plus an additional one twelfth of 2 percent of their base salary for each additional full month of service beyond twenty-five years, the length of service requirement applicable to most state employees. Consequently, state police

of state police as a state policeman for twenty-five years or more and shall have reached the age of sixty years may be retired by the board of finance and control, and thereafter such person shall receive a salary equal to one-half of his average salary for the five years next preceding such retirement. . . ."

[24] General Statutes (Sup. 1953) § 115c provided in relevant part: "The age requirements in the first sentence of section 114c shall not apply to any state policeman forty-seven years of age or over in the active service of the state police department . . . who makes application, by himself or the commissioner of state police, for retirement after . . . twenty years of service as a state policeman." Under General Statutes (Sup. 1953) § 114c, male state employees were allowed to retire at age fifty-five after twenty-five years of service or at age seventy after twenty years of service, and female employees were permitted to retire at age fifty after twenty-five years of service or at age sixty-five after twenty years of service.

officers who retired with more than twenty years, but less than twenty-five years, of state police service were not entitled to credit for their service in excess of twenty years, even though they had continued to contribute to the state employees retirement fund after the completion of twenty years of service. The legislature rectified this inequity in 1957 when it enacted a separate provision for the calculation of retirement payments to state police officers; see Public Acts 1957, No. 510, codified at General Statutes (1958 Rev.) § 5-104;[25] pursuant to which state police retirees were authorized to receive an additional one twelfth of 2 percent of their base salary for each month of state police service in excess of twenty years.[26]

In 1961, the legislature enacted No. 234 of the 1961 Public Acts, entitled "An Act Concerning The Restatement Of The State Employees Retirement Act With All Amendments Thereto In A Simpler, Clearer And More Orderly Form," which made no substantive changes to the statutory scheme governing the retirement of state employees. The provisions of the act relating specifically to state police officers were codified at General Statutes (Cum. Sup. 1961) § 5-173.[27] Later in

---

[25] General Statutes (1958 Rev.) § 5-104 provided in relevant part: "Each state policeman, forty-seven years of age or over, shall, at the time he retires or is retired in accordance with the provisions of sections 5-101 and 5-103, receive a retirement salary equal to fifty per cent of his base salary for twenty years of service as a state policeman, and for each additional full month of service as a state policeman after twenty years of such service there shall be added to his retirement salary a sum equalling one-twelfth of two per cent, computed on his base salary."

[26] Since the enactment of No. 510 of the 1957 Public Acts, the method for calculating the retirement income of state police officers has been set forth in a section of the state employee retirement statutes separate from the statutory provisions governing the calculation of retirement payments to other, nonhazardous duty state employees.

[27] General Statutes (Cum. Sup. 1961) § 5-173 provided in relevant part: "STATE POLICE. (a) A state policeman in the active service of the state police department, who has reached his forty-seventh birthday and completed at

1961, however, the legislature amended § 5-173 to allow state police officers to receive retirement credit for certain wartime military service. Public Acts 1961, No. 494, codified at General Statutes (Cum. Sup. 1961) § 5-173 (c).[28] Because the act already contained a similar military credit generally available to members of the state retirement system; see General Statutes (Cum. Sup. 1961) § 5-180;[29] the commission, relying on

least twenty years of service as a state policeman, shall be retired on his own application or on the application of the commissioner of state police.

"(b) Each such policeman shall receive a monthly retirement income equal to one-twelfth of (1) fifty per cent of his base salary, as defined in subsection (b) of section 5-162, for his twenty years of service as a state policeman, plus (2) two per cent of his base salary for each year, taken to completed months, of his service as a state policeman in excess of twenty years. . . ."

[28] General Statutes (Cum. Sup. 1961) § 5-173 (c) provided: "Any state policeman who, as a state policeman, was granted military leave to enter the armed forces, as defined by section 27-103, and who, upon his discharge and within ninety days, returned to the state police department as a state policeman, shall be granted retirement credit for any period of service in time of war, as defined by said section, toward the required minimum of twenty years as a state policeman; and any state policeman may be granted credit for any such war service prior to his employment as a state policeman upon payment of contributions and interest computed in accordance with subsection (b) of section 5-180, but such service shall not be counted toward the minimum service requirement of twenty years."

[29] General Statutes (Cum. Sup. 1961) § 5-180 provided in relevant part: "MILITARY SERVICE. (a) The war service before September 1, 1939, of a veteran, as defined in section 5-29a, shall be counted as state service if the member began to make his retirement contributions before September 1, 1941, and made retirement contributions on all salary received by him from September 1, 1939, until his retirement date.

"(b) The war service before September 1, 1939, of a veteran who became a member after September 1, 1939, and the war service on and after September 1, 1939, of a veteran who became a member at any time, shall be counted as state service if the member makes retirement contributions for each month of war service as defined by section 5-29a. Such contributions shall equal one-twelfth of four per cent of his first year's salary as a state employee multiplied by the total number of months of such war service, with interest at four per cent per year from the time such war service was rendered or from September 1, 1939, whichever is later, until the date of payment or January 1, 1962, whichever is earlier. Such contributions may be made in twelve equal installments, interest thereon to be paid not later than the last day of the month following the payment of the last of such installments."

the principle of statutory construction that the legislature is presumed not to pass superfluous legislation; see, e.g., *Yale University* v. *Blumenthal*, 225 Conn. 32, 40, 621 A.2d 1304 (1993); argues that the enactment of § 5-173 (c) is persuasive evidence that the legislature did not intend hazardous duty employees to be entitled to the supplemental credit provisions of the act. The commission reasons that General Statutes (Cum. Sup. 1961) § 5-173, the immediate precursor of the statutory section at issue in this appeal, comprised a special "hazardous duty retirement system" entirely separate and distinct from the retirement system applicable to other state retirement system members. Under this view, state police officers who opted to retire pursuant to then § 5-173 were not eligible to receive any of the supplemental retirement credits to which other state retirement system members were entitled, regardless of whether the plain language of the act provided to the contrary.

The commission's argument is unpersuasive for several reasons. First, there was nothing in the language of the act to suggest that state police officers who elected to retire under General Statutes (Cum. Sup. 1961) § 5-173 were thereby deemed to have relinquished their status as state retirement system members for purposes of every supplementary retirement credit. Second, the state retirement system was the only retirement system established under the act; contrary to the commission's claim, there was not, and is not, a separate "hazardous duty retirement system" for hazardous duty employees. Finally, the commission's argument is based on the mistaken premise that state police officers retiring under General Statutes (Cum. Sup. 1961) § 5-173 would have been eligible to receive military credit under General Statutes (Cum. Sup. 1961) § 5-180 had they otherwise been considered state retirement system members for purposes of the supplemen-

tary retirement credits under the act. Section 5-180 provided that certain wartime military service "shall be counted as state service" if the retiree had made certain retirement contributions for each month of such military service. See footnote 29. When § 5-173 (c) was enacted in 1961, however, state police officers retiring under the special provisions of § 5-173 (b) were not, under the plain terms of that subsection, eligible to receive retirement credit for any periods of state or nonstate service other than as state police officers. Consequently, state police retirees would not have been eligible to receive retirement credit for wartime military service pursuant to § 5-180 because, under that section, such military service was deemed to be "state service" and not "state police service." Thus, § 5-173 (c) was enacted not because state police retirees were not members of the state retirement system for the purposes of the supplementary retirement credit but because, under the unambiguous language of §§ 5-173 (b) and 5-180, state police retirees were not eligible for the wartime military credit available to other state retirement system members.[30]

---

[30] The legislative history of General Statutes (Cum. Sup. 1961) § 5-173 (c) also demonstrates that this statute was enacted to remedy the unintended consequences stemming from the language of §§ 5-173 (b) and 5-180. For example, Representative Thomas F. Kelly, a proponent of the proposed legislation, explained that § 5-173 (c) "provides that a State Policeman who is granted military leave during war time and then re-enters the Department after the period described by Statute, would receive credit . . . towards the 20 year retirement plan. All other state employees have this privilege. War time service is credited toward their retirement years. *The Retirement Commission has had some difficulty in interpreting the law after the change which provided a 20 year retirement for State policemen. This particular bill would clarify the situation and allow the State police to have credit for that war time service.*" (Emphasis added.) 9 H.R. Proc., Pt. 7, 1961 Sess., pp. 3302–3303. The comments of Senator Alfio C. Urbinati are of similar import: "This bill would entitle State Policemen [to] credit their pension system in two cases. One, it would give credit for war service the first twenty years. In other words, if he was a State Policeman prior to entering the war service . . . he would receive credit for those years

The commission also contends that the enactment of No. 83-533 of the 1983 Public Acts, which modified several provisions of the act to bring it into conformity with the terms of the pension agreement negotiated between the state and the bargaining unit for the state employees' unions,[31] supports its claim that the legislature intended to preclude hazardous duty retirees from obtaining the supplemental retirement credit generally available to other members of the state retirement system. Whereas, prior to 1983, state police retirees were entitled to additional monthly retirement income under § 5-173 (b) of one twelfth of 2 percent of their base salary for each year of "service as a state policeman" in excess of twenty years; see footnote 27; the 1983 amendment to § 5-173 (b) authorized monthly payments to state police officers of one twelfth of 2 percent of their base salary for each year of "Connecticut state service" in excess of twenty years.[32] The commission argues that since retirement credit for prior state service was already generally available to members of the state retirement system under General Stat-

towards his twenty years retirement, and the second phase of this bill, would allow his purchasing into the retirement system for State Policemen who came to work as State Policemen after the war service, which is the very same thing that is done for every state employee. *The fact that this needs to [be] put into the law is that their retirement system is slightly different than the general employees.* " (Emphasis added.) 9 S. Proc., Pt. 8, 1961 Sess., pp. 2946–47.

[31] In an earlier amendment to the act, the legislature had designated prison guards as hazardous duty employees entitled to the same retirement benefits as state police officers. See Public Acts 1967, No. 617. Certain other categories of state employees were also included as hazardous duty employees under the terms of the pension agreement codified in the 1983 amendments to § 5-173.

[32] See footnote 4. Consistent with this new language, the legislature also added § 5-173 (g); Public Acts 1983, No. 83-533, § 17; which provides that "[o]n and after October 1, 1982, an employee who has met the twenty-year minimum service requirement and is thus eligible for benefits under this section shall have any other Connecticut state employment recognized in calculating the amount of his benefits."

utes (Cum. Sup. 1961) § 5-181[33] before the 1983 amendment to § 5-173 (b), the amendment evinces the intent of the legislature that hazardous duty employees were not eligible for the supplementary retirement credit under § 5-181 because they were not members of the state retirement system for purposes of such credit.

We conclude that this argument is without merit for the same reasons that we have rejected the commission's claim concerning the wartime service credit. The commission's contention that hazardous duty employees are not state retirement system members for the purposes of the supplementary retirement credits is contradicted by the express terms of the act, which contain no indication that hazardous duty retirees are to be excluded from the state retirement system for any reason. As we have previously discussed, prior to the 1983 amendment to § 5-173 (b), state police officers were not entitled to service credit for any state or non-state service other than as a state police officer. In light of the specific limitation placed upon the service credits available to state police retirees prior to 1983, the general credit for state service authorized pursuant to the catchall language of § 5-181 was not available to state police officers under the former § 5-173 (b). Thus, the 1983 amendment to § 5-173 (b) authorizing hazardous duty retirement credit for other state service in excess of twenty years of hazardous duty service was neces-

---

[33] General Statutes (Cum. Sup. 1961) § 5-181 provided in relevant part: "A member who has been in the active full-time employment of the state for some past period or periods not otherwise credited for retirement purposes, and for which he cannot obtain credit for retirement purposes under any other section of this chapter, may obtain credit for such period or periods of service for retirement purposes; provided he has been in the active full-time employment of the state continuously for the twelve months next preceding his written request to the retirement commission for such service credit, and provided he pays to the retirement fund for each month of such service a sum equal to one-twelfth of five per cent of his gross yearly rate of compensation as of the date such service was rendered, with interest thereon . . . ."

sitated by the fact that prior thereto, such credit had been prohibited by the unambiguous terms of § 5-173. Contrary to the commission's contention, therefore, the 1983 amendment to § 5-173 (b) carries no implication that hazardous duty retirees are not entitled to the supplementary credit provisions of the act, such as § 5-192b, which by their terms are expressly available to such hazardous duty employees.

Accordingly, we conclude that neither the 1961 nor the 1983 amendments to the act advance the commission's contention that hazardous duty members of the state retirement system are precluded from receiving retirement credit for their prior municipal service pursuant to § 5-192b. Furthermore, several other considerations relevant to our resolution of the plaintiff's claim for municipal service retirement credit militate against the view espoused by the commission.

First, under the commission's interpretation of the act, hazardous duty employees would not be eligible to receive retirement credit for educational leave under § 5-174[34] or for sick leave under § 5-174a,[35] even though those statutory sections are, by their express terms, applicable without limitation to all members of the state retirement system. In the absence of clear statutory language to the contrary, we are not persuaded that the legislature intended to prohibit hazardous duty retirees from receiving retirement credit for time spent on unpaid educational leave "for the purpose of increasing [the employee's] proficiency in his [or her] position" under § 5-174, or for sick leave granted "for the protection or improvement of [the employee's] health" under § 5-174a.

Second, under the tier II retirement plan; see footnote 9; hazardous duty employees, including state police

[34] See footnote 20.
[35] See footnote 21.

officers, are entitled to retirement credit, albeit under narrowly prescribed circumstances, for their prior municipal service and for certain educational and sick leave. See General Statutes §§ 5-192i and 5-192n. Although the debate in the Senate and the House of Representatives on the tier II plan contains little discussion of its substantive provisions, the legislative history is clear that the plan was intended to reduce the cost of the state retirement system by providing retirees with less generous retirement benefits than those available to tier I retirees. See, e.g., 26 S. Proc., Pt. 1, 1983 Sess., pp. 88–92, remarks of Senator Marcella C. Fahey; 26 H.R. Proc., Pt. 1, 1983 Sess., pp. 68–70, remarks of Representative Gardner E. Wright, Jr. In view of the cost-saving purpose of the legislation, it is reasonable to conclude that the legislature would not have awarded hazardous duty employees retirement credit for prior municipal service or for educational and sick leave if no such credit had previously been available to tier I hazardous duty retirees.

Finally, inspectors in the division of criminal justice retiring under the tier I plan are authorized to receive retirement credit for their prior municipal police service; see General Statutes § 5-188 (d); even though they, like state police officers and other hazardous duty employees, are also eligible to retire at age forty-seven after twenty years of service as an inspector. See General Statutes § 5-188 (b). We can discern no reason, and there is none to be found in the pertinent legislative history, why the legislature would have awarded municipal service retirement credit to inspectors and not to state police officers.

In sum, we are not persuaded that the legislative history of the act supports the commission's argument that the plaintiff is not entitled to receive credit for his prior municipal service. Accordingly, we reject the commission's alternate ground for affirmance.

## II

The commission also maintains that the Appellate Court properly concluded that the term "Connecticut state service" under § 5-173 (b) encompasses only actual state service and, therefore, does not include municipal service deemed to be "active state service" by § 5-192b (b). Our resolution of the commission's claim turns upon the proper interpretation of those two statutory provisions.[36] In construing statutes, "[o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Citations omitted; internal quotation marks omitted.) *Fleming* v. *Garnett*, 231 Conn. 77, 91–92, 646 A.2d 1308 (1994); *State* v. *Metz*, 230 Conn. 400, 409, 645 A.2d 965 (1994). Upon application of these well established principles of statutory construction, we are persuaded that the municipal service deemed "active state service" by § 5-192b (b) constitutes "Connecticut state service" within the meaning of § 5-173 (b) and, accordingly, that the plaintiff is entitled to credit for his five

---

[36] This argument differs from the commission's primary, albeit alternate, ground for affirmance; see footnotes 3 and 16; because, under the commission's primary claim, the terms of the plaintiff's retirement are governed exclusively by § 5-173. See part I of this opinion. Under its second argument, addressed hereinafter, the commission contends that even if § 5-173 does not alone control the retirement benefits available to hazardous duty retirees, the term "active state service" as used in § 5-192b (b) does not constitute "Connecticut state service" within the meaning of § 5-173 (b). We were told by the commission at oral argument that the parties had informed the Appellate Court that it could properly decide the plaintiff's appeal on the latter ground, which it did.

years of municipal service in the calculation of his monthly retirement payments.[37]

The commission claims, and the Appellate Court agreed, that if the term "Connecticut state service" under § 5-173 (b) is construed to have the same meaning as "active state service" under § 5-192b (b), then the word "Connecticut" in subsection (b) of § 5-173 would be rendered surplusage. Employing the tenet of statutory construction that "no part of a legislative enactment is to be treated as insignificant or unnecessary . . . and no word in a statute is to be treated as superfluous"; (internal quotation marks omitted) *State* v. *Anderson*, 227 Conn. 518, 528, 631 A.2d 1149 (1993); the Appellate Court concluded that "the word 'Connecticut' must set some limitation or restraint on

[37] In deciding the commission's appeal, the Appellate Court "accord[ed] great deference to the commission's interpretation" of the act because General Statutes § 5-155a (c) charges the commission with the duty to administer the state employees retirement system. *LoPresto* v. *State Employees Retirement Commission*, supra, 34 Conn. App. 516. Although we have often stated that the construction afforded a statute by the agency responsible for its enforcement is entitled to great deference; see, e.g., *Perkins* v. *Freedom of Information Commission*, 228 Conn. 158, 165, 635 A.2d 783 (1993); *Starr* v. *Commissioner of Environmental Protection*, 226 Conn. 358, 372, 627 A.2d 1296 (1993); *Griffin Hospital* v. *Commission on Hospitals & Health Care*, 200 Conn. 489, 496–97, 512 A.2d 199, appeal dismissed, 479 U.S. 1023, 107 S. Ct. 781, 93 L. Ed. 2d 819 (1986); we have also indicated that "[o]rdinarily, the construction and interpretation of a statute is a question of law for the courts where the administrative decision is not entitled to special deference, particularly where, as here, the statute has not previously been subjected to judicial scrutiny or time-tested agency interpretations." *New Haven* v. *Freedom of Information Commission*, 205 Conn. 767, 773–74, 535 A.2d 1297 (1988); see also *West Hartford Interfaith Coalition, Inc.* v. *Town Council*, 228 Conn. 498, 507, 636 A.2d 1342 (1994); *Jutkowitz* v. *Dept. of Health Services*, 220 Conn. 86, 106, 596 A.2d 374 (1991); *Southington* v. *State Board of Labor Relations*, 210 Conn. 549, 559, 556 A.2d 166 (1989). Although the commission informs us that it has previously denied municipal service credit to hazardous duty retirees, that practice had not heretofore been the subject of judicial review or formal agency examination. Thus, we conclude that special deference to the commission's interpretation of §§ 5-173 and 5-192b was not warranted.

the words 'state service.' " *LoPresto* v. *State Employees Retirement Commission*, supra, 34 Conn. App. 518.

The Appellate Court also determined that the commission's statutory interpretation was supported by the legislative history of § 5-192b, which reveals that prior to 1984, that section had consisted only of the language of the current subsection (a) and had contained no language converting municipal service to "active state service." The legislature, by No. 84-447 of the 1984 Public Acts, amended § 5-192b in 1984, adding subsections (b) and (c). As the Appellate Court explained, "[t]he purpose of the amendment was to resolve the inequities created by [the statute], which did not permit certain members of the state employees retirement system (SERS), who were previously members of a municipal employees' retirement system (MERS), to obtain retirement credit for that service. 27 H.R. Proc., Pt. 19, 1984 Sess., pp. 6904–6906; 27 S. Proc., Pt. 6, 1984 Sess., p. 2228. Subsection (a) allows a state employee, who is a member of SERS, who had prior service in a municipality that had joined MERS and who did not withdraw his or her retirement contributions, to obtain credit for those contributions for the purpose of retirement benefits. This, however, left members of SERS who previously had been employed by municipalities that had not joined MERS and those who had withdrawn their retirement contributions unable to obtain credit for their prior municipal service. The amendment adding subsections (b) and (c) remedied this inequity. Subsection (b) provides that members of SERS who previously had been municipal employees whose municipality had joined MERS and who withdrew their retirement contributions from the municipal retirement fund when they left municipal service may obtain credit for those contributions by making certain payments into the SERS fund. Subsection (c) provides that members of SERS who had previously been municipal employ-

ees and had prior service in a municipality that had not joined MERS may also obtain credit for that prior municipal service by certain payments of transfers." Id., 519.

In light of the reasons for the 1984 amendment to § 5-192b, the Appellate Court concluded that "[t]he trial court's interpretation of § 5-192b, for the purposes of hazardous duty retirement benefits, recreates the same type of inequity that the 1984 amendment was designed to remedy. The language converting municipal service to state service is found only in subsection (b). Thus, only hazardous duty employees who previously had worked for a municipality that had joined MERS and who had withdrawn their retirement contributions when they left municipal service would be entitled to credit for their previous municipal service. Hazardous duty employees who fall under subsection (a) or (c) would not be entitled to a credit for their prior municipal service because those subsections do not contain the language converting municipal service to state service. This result directly contradicts the legislature's intent in amending § 5-192b. We cannot presume that the legislature intended to create such a bizarre result. See *DeMilo* v. *West Haven*, 189 Conn. 671, 679, 458 A.2d 362 (1983), and cases cited therein." Id., 520. Although it acknowledged that the legislative history of § 5-173 sheds no light on why the legislature inserted the word "Connecticut" before the term "state service" in subsection (b) of § 5-173; see id., 518; the Appellate Court held that the term "Connecticut state service" under § 5-173 (b) is limited to actual state service and does not include municipal service defined as state service under § 5-192b (b).[38] We do not agree with the con-

---

[38] The commission posits the following textual explanation in support of the Appellate Court's conclusion. Prior to 1983, state police officers were entitled to 2 percent of their base salary for each year of service in excess of twenty years for their "service as a state policeman" only. See footnote

clusion of the Appellate Court that the plaintiff is not entitled to hazardous duty retirement credit for his prior municipal employment.

The Appellate Court's conclusion is not supported by the plain language of the pertinent statutory provisions. Except insofar as the term "Connecticut state service" denotes service with the state of Connecticut and not with any other state, the term "Connecticut state service" does not, on its face, convey a meaning different than that of the term "state service." Thus, the term "Connecticut state service" does not connote actual state employment, as distinguished from non-state employment that is *deemed* to be state employment, to any greater or lesser degree than does the term "state service." Furthermore, the legislature, had it intended to limit the retirement credit available to hazardous duty employees with excess of twenty years service to *actual* state service, it could have said so in one of the two definitional sections of the act, General Statutes §§ 5-154 and 5-192f, wherein the terms "state service"[39] and "state employment,"[40] respectively, are defined. Alternatively, the legislature could expressly have excluded § 5-173 from the scope of § 5-192b (b), or it could have used the term "actual state service"

27. When the legislature amended § 5-173 in 1983 to read "Connecticut state service," it also enacted subsection (g) of § 5-173, which provides that hazardous duty retirees who have satisfied the twenty year hazardous duty service requirement shall receive retirement credit for their "Connecticut state *employment*." (Emphasis added.) The commission claims that the term "Connecticut state service" was added to § 5-173 (b) in light of the enactment of § 5-173 (g), and that when subsection (b) is read in the context of subsection (g), "Connecticut state service" includes (1) hazardous duty service in excess of twenty years, and (2) any other actual Connecticut state employment. This explanation is little more than speculation, however, because it is unsupported by any legislative debate or other statutory history. Moreover, the commission does not claim that "Connecticut state employment" has a different meaning than "active state service."

[39] General Statutes § 5-154 (m).
[40] General Statutes § 5-192f (g).

instead of the term "Connecticut state service" in § 5-173 (b). Any of these obvious and unambiguous alternatives were readily available to the legislature had it sought to prohibit hazardous duty employees from receiving retirement credit for their prior municipal service under § 5-192b.

In addition, contrary to the conclusion of the Appellate Court, the word "Connecticut" in subsections (b) and (g) of § 5-173 is not necessarily rendered superfluous under the plaintiff's construction of the act because, as we have previously discussed, the drafters may well have inserted the adjective "Connecticut" before "state service" for the purpose of excluding prior employment with all states other than Connecticut. Under General Statutes § 5-191,[41] state retirement system members may receive retirement credit for service with other states. It is therefore reasonable to presume that in restricting hazardous duty retirement credit under § 5-173 (b) to "Connecticut state service" in excess of twenty years, the legislature sought to limit such credit

[41] General Statutes § 5-191 provides: "CREDIT FOR SERVICE TO OTHER STATES. A member of the state employees retirement system who has been in the active full-time employment of another state or states for some past period or periods for which he has received or will receive no retirement benefit or pension and for which he cannot obtain credit for retirement purposes under any section of this chapter may receive credit for such period or periods, not to exceed ten years in the aggregate, by making contributions to the State Employees Retirement Fund, for each year of such prior service, equal to six per cent of his annual rate of compensation when he first became a full-time employee of this state, provided the state or states in which such service was rendered make similar provision for former employees of this state and provided such payment into the state employees retirement system shall be made within one year of his entry into service in this state or on or before July 1, 1966, whichever is later. When a person who has gained credit for such prior service retires, not more than one year of such out-of-state service may be counted for each two years of state service; provided, if such person has purchased more of such service than can be counted, refund of the amound paid on the extra years of service shall be made."

to service with this state and not any other.[42] Furthermore, this construction of the act is more plausible than the interpretation urged by the commission because, as we have previously discussed, the phrase "Connecticut state service" is not synonymous with "actual state service."

The interpretation of the act urged by the commission is similarly unsupported by the legislative history of the 1983 amendments to § 5-173. As the Appellate Court indicated, the legislative discussion of those amendments was limited and provides no insight into why the term "Connecticut state service" was inserted into § 5-173 (b) and why subsection (g) of § 5-173 was added. It is noteworthy, however, that the amendments were the product of negotiations between the state and state employee unions over employee pension rights, and the amendments, though ratified by the legislature, were drafted by those parties. Because the legislation was accompanied by no substantive written or oral commentary, it is impossible to determine their purpose from the legislative history. Indeed, it is by no means clear that the legislature necessarily attributed any special meaning to the word "Connecticut" as it is used in § 5-173.

Finally, we do not agree with the Appellate Court that the plaintiff's interpretation of the act recreates the same type of inequity that the 1984 addition of subsections (b) and (c) to § 5-192b was designed to remedy. Although the sentence "[s]uch municipal service

---

[42] The commission also claims that the plaintiff's construction of § 5-173 renders subsection (g) of § 5-173 superfluous. In light of the fact, however, that § 5-173 (b) expressly provides for retirement credit for prior "Connecticut state service," § 5-173 (g) appears to be superfluous under any interpretation of § 5-173. Although the commission seeks to explain the interrelationship between subsections (b) and (g) of § 5-173; see footnote 38; it has not tendered an explanation as to why the enactment of subsection (g) was necessary under its interpretation of the act.

shall be considered to be active state service for the purposes of this chapter" appears only in subsection (b) of § 5-192b, it appears that the language is equally applicable to subsections (a) and (c). The term "municipal service" has the same meaning in each of subsections (a), (b) and (c), and we see no reason why the legislature would have treated former municipal employees eligible for retirement credit under subsection (b) differently than those entitled to credit under subsections (a) and (c). Indeed, as the legislative history of the 1984 amendments indicates, their purpose was to make municipal service retirement credit equally available to all state retirees with qualified prior municipal employment.[43] It is reasonable to assume, therefore, that the reference to *such* municipal service" (emphasis added) in subsection (b) is not limited to the municipal employees enumerated in that subsection alone, but that it is also applicable to former municipal employees eligible for credit under subsections (a) and (c).

We acknowledge that the hazardous duty provisions of the act are not a model of clarity. In light of the language and purpose of the act, however, we conclude that the plaintiff is entitled to hazardous duty retirement credit under §§ 5-173 and 5-192b for his prior municipal service as a Stonington police officer.

The judgment of the Appellate Court is reversed, and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion the other justices concurred.

---

[43] The legislative history of subsections (b) and (c) of § 5-192b contains no indication that the legislature intended to distinguish between the various categories of former members of the municipal employee retirement system seeking state retirement credit for their prior municipal service. See, e.g., 27 H.R. Proc., Pt. 19, 1984 Sess., pp. 6904–6906, remarks of Representative Irene B. Favreau; see also 27 S. Proc., Pt. 6, 1984 Sess., pp. 2228–31.