[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 8546
On January 30, 1976, the petitioner, Ronald Piskorski, an inmate at the Cheshire Correctional Institution, was sentenced on a six count information to serve six consecutive terms of 25 years to life.[1] The petitioner's total effective minimum sentence amounted to 150 years. In accordance with the applicable General Statutes at the time, the respondent immediately calculated and subtracted various credits from the petitioner's minimum sentence.
Pursuant to General Statutes (Rev. to 1975) § 18-7, the respondent credited the petitioner's sentence with 60 days per year for the first five years of the sentence and with 90 days per year for the remaining 145 years of the petitioner's sentence, thereby totaling 13, 350 days of good conduct credit.
The respondent then credited the petitioner's sentence with presentence confinement credit pursuant to General Statutes (Rev. to 1977) § 18-97.[2] The petitioner was in presentence confinement for 456 days from October 31, 1974 until January 30, 1976. In accordance with Delevieleuse v. Manson,184 Conn. 434, 439 A.2d 1055 (1981),[3] the respondent then multiplied the total amount of presentence confinement days by 6 to arrive at a total of 2, 736 days of presentence confinement credit.
Pursuant to Public Act 75-222,[4] the respondent then credited the petitioner's sentence with presentence confinement good conduct credits. According to Public Act 75-222, the petitioner was entitled to five days credit for every month of his presentence confinement. The respondent took the total number of days in presentence confinement, 2,736, and divided it by 30.4375 to arrive at a total of 89.89 months of presentence confinement. Since the petitioner received 5 days good conduct credit for each month of presentence confinement, the petitioner was entitled to 449 days of presentence confinement good conduct credit.
The respondent, after adding all of the above credits, concluded that the petitioner was entitled to 16,535 days of credit.[5] The respondent then subtracted these credits from the petitioner's sentence and calculated that the petitioner had to actually serve 38,251 days in confinement.[6] After arriving at the total amount of actual days in confinement, the respondent CT Page 8547 calculated the petitioner's meritorious time service award credit under § 18-7. Pursuant to General Statutes (Rev. to 1975) § 18-7, the petitioner was entitled to an additional 5 days of credit for "each month as a meritorious time service award. . . ." The respondent divided the petitioner's total amount of actual days in confinement, 38,251, by 30.4375 and determined that the respondent had to serve 1,256. 71 months in prison. The respondent then multiplied 1,256.71 months by 5 days to arrive at a total of 6,283 days of meritorious time service award credit.
On July 14, 1995, the petitioner filed a petition for a writ of habeas corpus asserting that the respondent incorrectly calculated the petitioner's meritorious time service award under § 18-7. According to the petitioner, he is entitled to 5 days for every month of his 150 year sentence. The petitioner states that his 150 year sentence amounts to 1,800 months and that he is entitled to 5 days per each of these months. Therefore, the petitioner contends that he is entitled to 9,000 days credit as a meritorious time service award, and not 6,283 days.
The respondent argues that the additional five days credit provided to prisoners under § 18-7 is a time service award and the 5 days credit can only be awarded for those months that the petitioner would actually serve in prison. According to the respondent, the petitioner would not have to serve the entire 150 years because the credits[7] provided to him at the commencement of his sentence decreased the amount of time that he would have to serve in prison. Therefore, the respondent states that the credits awarded to the petitioner as a meritorious time service award must be calculated by the actual months that the petitioner will spend in confinement. The respondent, therefore, requests that the court deny the petition.
"An application for a writ of habeas corpus shall be made to the superior court or to a judge thereof for the judicial district in which the person whose custody is in question is claimed to be illegally confined or deprived of his liberty. . . ." General Statutes § 52-466 (a). Since the petitioner has alleged that the respondent has deprived him of good time credits, the court possesses subject matter jurisdiction over this matter. Seno v. Commissioner ofCorrection, 219 Conn. 269, 593 A.2d 111 (1991); Delevieleuse v.Manson, 184 Conn. 434, 439 A.2d 1055 (1981); Frazier v. Manson, CT Page 8548176 Conn. 638, 410 A.2d 475 (1979); Abed v. Commissioner ofCorrection, 43 Conn. App. 176, ___ A.2d ___ (1996).
The petitioner alleges that the respondent incorrectly interpreted § 18-7 and, as a result, failed to properly provide the petitioner with the correct amount of meritorious time service award credits. The court's "fundamental objective in construing a statute is to ascertain and give effect to the apparent intent of the legislature. . . ." (Citations omitted; internal quotation marks omitted.) Derwin v. StateEmployees Retirement Commission, 234 Conn. 411, 420,661 A.2d 1025 (1995). "In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.)LoPresto v. State Employees Retirement Commission, 234 Conn. 424,447, 662 A.2d 738 (1995). "When the language is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent." Oller v. Oller-Chiang, 230 Conn. 828, 848, 646 A.2d 822
(1994).
General Statutes (Rev. to 1975) § 18-7 provides in relevant part: "Any prisoner may, by good conduct and obedience to the rules of said institution, earn a commutation or diminution of his sentence, as follows: Sixty days for each year, and pro rata for a part of a year, of a sentence which is not for more than five years; and ninety days for the sixth and each subsequent year, and pro rata for a part of a year, and, in addition thereto, five days for each month as a meritorious time service award which may be granted in the discretion of the warden and the commissioner for exemplary conduct and meritorious achievement. . . ." "At some point prior to 1911, the correction officials instituted a system whereby all of an inmate's potential good time . . . was calculated before the inmate began serving the sentence. . . . [I]t seems that this system was implemented for administrative efficiency. The potential amount of good time was credited against the sentence at the beginning of the term of incarceration, and as a prisoner engaged in misconduct the good time credit was reduced and the sentence was increased up to, but not to exceed, the original term ordered by the court." Nichols v. Warren, 209 Conn. 191, 199, 550 A.2d 309
(1988). "This method of awarding good time is commonly referred CT Page 8549 to as posting." (Internal quotation marks omitted.) Seno v.Commissioner, supra, 219 Conn. 275.
The respondent employed the posting method when he calculated all of the petitioner's credits under § 18-7. The petitioner argues, however, that the respondent incorrectly posted his meritorious time service award credits because the respondent based his calculation of these credits on months that the petitioner would actually have to serve in prison as opposed to the total months of his 150 year effective sentence. The Supreme Court of New Hampshire was confronted with a similar issue in Fielders v. Cunningham, 497 A.2d 1237 (N.H. 1985).
The plaintiff in Fielders v. Cunningham was an inmate at the New Hampshire State Prison. Id., 1238. The statute in effect at the time of the plaintiff's offenses and sentencing stated, "[a]ny prisoner may by good conduct and obedience to the rules of said prison earn credits against his sentence as follows: I. Ninety days for each full year of the minimum term of his sentence, prorated for a part of any such year, [to be applied only against the minimum term of his sentence]; II. In addition to the foregoing, 5 days for each month of meritorious service, which may be granted in the discretion of the warden for exemplary conduct. [Credits for meritorious service shall be applied against both the minimum and maximum terms of the sentence.]" Id. "The bracketed provisions were added by the 1979 amendments." Id.
Passage of the 1979 amendments motivated the warden to review the method used to calculate good time and meritorious service credits. Id. Prior to 1979, both good time and meritorious service credits were based on and subtracted from the inmate's total minimum sentence. Id. "The effect of deducting both types of credits fully from the minimum sentence was that a prisoner was initially given good conduct credit for time that might not actually be served." Id.
After the 1979 amendments, the warden concluded that the New Hampshire legislature did not intend this result. Id. The warden continued to deduct the good time credits from the inmate's minimum sentence. Id. "Meritorious credits, however, were calculated only for time which would actually be served." Id. The warden determined that the use of the phrases minimum term and maximum term in conjunction indicated a legislative intent to award meritorious credits only for time actually served. Id., CT Page 8550 1239.
The court agreed with the result of the warden's conclusion because of the language contained in the statute. Id. The court stated that "[t]he post-1979 application of the meritorious service credit statute is consistent with the plain language of that statute which provides credit of 5 days for each month of meritorious service, which may be granted in the discretion of the warden for exemplary conduct. Use of the word service in this context indicates that credits can only be awarded for time served." (Internal quotation marks omitted.) Id. Accordingly, the court found that the warden could only award meritorious service credits under the New Hampshire statute for time that the inmate would actually have to serve. Id.
Section 18-7 is analogous to the New Hampshire statute interpreted in Fielders v. Cunningham in that §18-7 provides that the warden may credit an inmate with "five days for each month as a meritorious time serviceaward. . . ." In construing a statute, the court must "presume that the legislature had a purpose for each sentence, clause or phrase in a legislative enactment, and that it did not intend to enact meaningless provisions." Turner v. Turner, 219 Conn. 703,713, 595 A.2d 297 (1991). "In construing statutes, no word or phrase should be treated as superfluous. . . ." Wilcox Trucking,Inc. v. Mansour Builders, Inc., 20 Conn. App. 420, 424,567 A.2d 1250 (1989), cert. denied, 214 Conn. 804, 573 A.2d 318 (1990). The court finds that the term "time service award," as stated in § 18-7, demonstrates a legislative intent to allow a warden to award an inmate 5 days extra credit per month that the inmate would actually have to serve. Therefore, the respondent, in accordance with the language of § 18-7, properly provided the petitioner with a meritorious time service award for time that the petitioner would have to actually serve. Accordingly, the respondent correctly computed the petitioner's meritorious time service award by first determining the total amount of months that the petitioner would have to actually spend in prison, and, then by multiplying this number by 5 days to calculate the petitioner's meritorious time service award pursuant to § 18-7.[8] Therefore, this court denies the Petitioner's petition for Writ of Habeas Corpus for the reasons stated hereinbefore.
William Sullivan, Judge CT Page 8551